PEOPLE v DUNLAP

PEOPLE v WILLIAMS

Docket Nos. 77-1364, 77-2161. Submitted October 5, 1978, at Detroit.— Decided December 6, 1978.

Theresa Dunlap, Harold Williams, and two others were charged with assault with intent to commit murder. Dunlap was convicted as charged, Williams was convicted of assault with intent to do great bodily harm less than murder, a third codefendant was convicted of the crime charged and the fourth was acquitted, Recorder's Court of Detroit, Samuel H. Olsen, J. Defendants Dunlap and Williams appeal separately, each claiming that their trial should have been severed from that of the codefendants. The Court of Appeals consolidated the cases for hearing and decision. *Held:*

1. Defendant Dunlap's failure to move in the trial court for a severance precludes appellate review of the issue, because there is no showing in the record of a miscarriage of justice as to Dunlap resulting from the joint trial.

2. Defendant Williams did move for a severance before any evidence was presented, alleging that a codefendant's testimony was going to exculpate that codefendant at Williams' expense. Williams did not, however, substantiate this allegation in any manner, thereby waiving his objection to the joinder. In addition, there was no prejudice to Williams as the jury apparently totally disbelieved the codefendant's testimony.

Affirmed.

1. CRIMINAL LAW—TRIAL—SEVERANCE—APPEAL AND ERROR—MISCARRIAGE OF JUSTICE.

A codefendant's failure to move for a severance of his trial precludes review of that issue except to remedy a miscarriage of justice.

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 9.
[2] 75 Am Jur 2d, Trial §§ 17, 20-24.
[3] 75 Am Jur 2d, Trial § 23.

2. CRIMINAL LAW—TRIAL—SEVERANCE—PREJUDICE—WAIVER—APPEAL AND ERROR.

　　Michigan has a strong policy in favor of joint trials and a defendant must make an affirmative showing of prejudice before he is entitled to severance; a defendant who moved for severance alleging that one of his codefendants was going to exculpate herself at his expense, but who made no effort to substantiate his allegation, waived his objection to the joinder and on appeal reversal of the defendant's conviction should be granted only to prevent a miscarriage of justice.

3. CRIMINAL LAW—TESTIMONY OF CODEFENDANT—PREJUDICE.

　　A defendant was not prejudiced by the antagonistic testimony of a codefendant where the record shows that the jury totally disbelieved that testimony and that the defendant was convicted on the evidence presented by the prosecution.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Michael R. Mueller,* Director, Prosecutor's Repeat Offenders Bureau, and *Raymond P. Walsh* (in Dunlap) and *Larry L. Roberts* (in Williams), Assistants Prosecuting Attorney, for the people.

*Raymond L. Miller,* for defendant Theresa Dunlap on appeal.

*Bruce R. Saperstein,* for defendant Harold Williams on appeal.

Before: BRONSON, P.J., and M. J. KELLY and D. C. RILEY, JJ.

PER CURIAM. Defendants were charged with the crime of assault with intent to commit murder, MCL 750.83; MSA 28.278. After a joint jury trial defendant Dunlap was convicted of the crime charged and sentenced to a prison term of 50 to 80 years, and defendant Williams was convicted of assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279, and sen-

tenced to a prison term of six years four months to 10 years. A third codefendant, Essie Henderson, was also convicted of assault with intent to murder and a fourth codefendant was acquitted. Defendants Dunlap and Harold Williams now appeal as of right.

Defendants' convictions arose out of an incident which occurred on March 22, 1976. The complainant and another person went to defendant Dunlap's house. Upon entering the house complainant was attacked by Essie Henderson. Ms. Henderson stabbed complainant with a pair of scissors, bit off part of her ear, and then hit her on the head with a wine bottle. After complainant was wrestled to the ground and tied up and while Ms. Henderson was sitting on her, defendant Dunlap injected heroin and bleach into complainant's body approximately six times. Complainant was then thrown into the trunk of a car and taken to the banks of the Detroit River where she was shot twice by defendant Williams, once in the neck and once in the arm. Complainant was found the next morning by police who took her to the hospital where she recovered from her injuries.

On appeal both defendants claim that their trials should have been severed from that of Essie Henderson because Ms. Henderson exculpated herself while implicating defendants. Such a claim, if proven, would require severance. *People v Hurst,* 396 Mich 1; 238 NW2d 6 (1976). We will address each claim separately.

Prior to trial defendant Dunlap did not move for a severance nor did she join defendant Williams' motion for a severance. In *People v Cochran,* 84 Mich App 710, 712; 270 NW2d 502 (1978), this Court stated that "a failure to move for severance precludes review of that issue, except to remedy a

miscarriage of justice". Accord, *United States v Papadakis,* 510 F2d 287 (CA 2, 1975), *cert den,* 421 US 950; 95 S Ct 1682; 44 L Ed 2d 104 (1975). A review of the record in this case shows no miscarriage of justice. Ms. Henderson did state that defendant Dunlap had stuck the complainant several times with a needle, but this point was admitted by the defense, and as such, there was no prejudice to defendant's case. More importantly, Ms. Henderson testified that defendant Dunlap was forced to accompany the others to the river where complainant was shot. Since complainant was obviously not dead at this time, testimony that defendant Dunlap no longer wanted to continue the escapade would tend to negative any finding that she intended to kill complainant, a necessary element of the crime charged. Taken as a whole, then, not only did Ms. Henderson's testimony not exculpate herself at the expense of inculpating defendant Dunlap but, if anything, Ms. Henderson's testimony served to exculpate defendant Dunlap. The decision not to object to the joinder of defendant Dunlap's trial with Ms. Henderson's was a tactical decision and will not be the basis for reversal on appeal.

Defendant Williams' case is more complicated. After the jury had been empaneled but before any evidence was taken, defendant Williams did move for severance based on the allegation that one of his codefendants was going to exculpate herself at his expense. He did not support this contention by citing previous antagonistic statements made by the codefendant, as was done in *Hurst,* nor did he accept the prosecution's suggestion of making an offer of proof on this point. There is a strong policy in this state in favor of joint trials and a defendant must make an affirmative showing of prejudice

before he is entitled to severance. *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976). Accord, *People v Gunter,* 76 Mich App 483; 257 NW2d 133 (1977). Since defendant Williams made absolutely no effort to substantiate his allegation, he waived his objection to the joinder, and on appeal reversal will be granted only to prevent a miscarriage of justice. *Cochran, supra.*

We find no such injustice in the present case. The record indicates that Ms. Henderson admitted her involvement in this affair and testified to defendant Williams' involvement. The only place where she tried to exculpate herself and inculpate defendant Williams was in regard to the question of intent to kill. The gist of her testimony on this point was that she did not want to kill complainant but she was forced by defendant Williams to accompany him to the river where he intended to shoot and kill complainant. The reason why severance is dictated in these situations is to assure that defendant will be convicted by the prosecutor's evidence, and not be prejudiced by a co-defendant who would all too willingly sacrifice defendant to save herself. See *Hurst, supra.*

In the present case, the prosecution's evidence clearly showed that defendant Williams put complainant in the trunk of his car, drove her to the river, and shot her twice. The only evidence that Ms. Henderson's testimony added to this was that defendant Williams had the subjective intent to kill complainant and she did not. The jury totally disbelieved this evidence. It convicted Ms. Henderson of assault with intent to murder and convicted Williams of assault with intent to do great bodily harm less than murder, the exact opposite of what it would have done if it had believed Ms. Henderson's testimony. Since the prosecution's evidence

clearly showed an assault with intent to do great bodily harm by Williams and the testimony of Ms. Henderson which implicated defendant Williams in a greater crime, but exculpated herself from that crime, was totally disbelieved by the jury, Williams was convicted on the evidence presented by the prosecution and was in no way prejudiced by the antagonistic testimony of his codefendant.

Defendants' other allegations of error are without merit.

Affirmed.