PEOPLE v McGILMER

Docket Nos. 78-2227, 78-4907. Submitted September 4, 1979, at Lansing.—Decided April 1, 1980.

Calvin McGilmer was convicted, Washtenaw Circuit Court, Edward D. Deake, J., of breaking and entering an occupied dwelling with intent to commit larceny therein and of being an habitual offender. He was tried with his brother and codefendant Norman McGilmer. Sometime before trial, Norman McGilmer's counsel filed an affidavit in support of his motion in opposition to consolidating the trial of Norman McGilmer with that of his brother Calvin McGilmer. Calvin McGilmer made no written motion nor filed any affidavit but orally moved opposing consolidation. The motions were denied. Defendant appeals. On appeal, defendant challenges the constitutionality of the habitual offender statute, argues that the discretion afforded the prosecutor under the habitual offender statute violates due process and equal protection and contends that the trial court committed reversible error by granting the prosecution's motion to consolidate his case with that of his brother and by denying his motion in opposition and his later motion to sever. *Held:*

1. The statutes providing for prosecution of a repeating offender are constitutional.

2. A prosecutor's discretion to charge under the habitual offender statute is not violative of due process or equal protection.

3. A severance should be granted where the defenses of several defendants jointly indicted are antagonistic to each other. A defendant must make an affirmative showing that he would be prejudiced by a joint trial before he is entitled to a severance. A fair reading of the record does not lead to the conclusion that the defenses of Calvin and his brother were

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders §§ 2-5.

[3-5] 75 Am Jur 2d, Trial §§ 20, 21.

Antagonistic defenses as ground for separate trials of codefendants in criminal case. 82 ALR3d 245.

sufficiently antagonistic to warrant a severance of trials. Both Calvin and Norman were at the scene of the crime. Both were identified and apprehended with the fruits of the burglary. The suggestion that the trial was a finger-pointing match between the brothers was a sham totally injected by counsel's argument and unsupported by actual or proffered testimony or exhibits.

Affirmed.

CYNAR, J., dissented on the issue of severance. He would hold that a separate trial should have been granted because the remarks of Norman's counsel in opening statement and closing argument were of such nature as to leave the impression that defendant was greatly prejudiced thereby. He would reverse and remand for a new trial.

OPINION OF THE COURT

1. CRIMINAL LAW — REPEATING OFFENDERS — SUPPLEMENTAL INFORMATION — STATUTES — CRIMINAL STATUS — PROTECTION OF CITIZENS.

The statutes providing for prosecution of a repeating offender by supplemental information are constitutional; the statutes are not directed toward the status of being an habitual criminal but to protect citizens from persons who continue to engage in criminal activities.

2. CRIMINAL LAW — REPEATING OFFENDERS — PROSECUTING ATTORNEY — DISCRETION — STATUTES — CONSTITUTIONALITY.

The discretion afforded a prosecutor to file a separate or supplemental information under the habitual offender statutes is not violative of due process or equal protection.

3. CRIMINAL LAW — TRIAL — SEVERANCE — JUDGE'S DISCRETION — ANTAGONISTIC DEFENSES.

A defendant generally does not have a right to a separate trial; however, a severance, which is discretionary with the court, should be granted where the defenses of several defendants jointly indicted are antagonistic to each other.

4. CRIMINAL LAW — TRIAL — JOINDER — SEVERANCE.

A defendant must make an affirmative showing that he would be prejudiced by a joint trial before he is entitled to a severance.

DISSENT BY CYNAR, J.

5. CRIMINAL LAW — TRIAL — JOINDER — SEVERANCE — PREJUDICIAL REMARKS.

*A defendant was prejudiced by a failure to grant his motion for*

*severance and a separate trial where the remarks of his co-defendant's counsel in opening statement and closing argument were of such nature as to be prejudicial against the defendant.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Albert B. Blixt, Jr.,* Assistant Prosecuting Attorney, for the people.

*Conlin, Conlin & McKenney* (by *Michael D. Highfield),* for defendant on appeal.

Before: M. J. KELLY, P.J., and M. F. CAVANAGH and CYNAR, JJ.

M. J. KELLY, P.J. Defendant was convicted of breaking and entering an occupied dwelling with intent to commit larceny therein, MCL 750.110; MSA 28.305, and of being an habitual offender, MCL 769.12; MSA 28.1084. Defendant was subsequently sentenced to 10 to 15 years imprisonment and now appeals as of right.

Defendant first assails his conviction under the habitual offender statute as being unconstitutional because it punished the status of being a criminal. This argument is lacking in merit. *People v Hendrick,* 52 Mich App 201, 207-208; 217 NW2d 112 (1974), *aff'd* 398 Mich 410; 247 NW2d 840 (1976), *People v Potts,* 55 Mich App 622, 634-639; 223 NW2d 96 (1974).

Likewise lacking in substance is defendant's claim that the discretion afforded the prosecutor under the habitual offender statute is violative of due process and equal protection. *People v Birmingham,* 13 Mich App 402; 164 NW2d 561 (1968).

Finally, defendant contends that the trial court committed reversible error by granting the prosecution's motion to consolidate his case with that of

his brother and by denying his motion in opposition thereto and his later motion to sever.

The decision on which the defendant relies for his severance argument is *People v Hurst,* 396 Mich 1; 238 NW2d 6 (1976), which states the general rule to be that a defendant does not have a right to a separate trial.

"Joinder of defendants for trial is usually within the discretion of the court. However, '[a] severance should be granted when the defenses of several defendants jointly indicted are antagonistic to each other'. 5 Wharton's Criminal Law & Procedure § 1946; Anno: *Right to severance where two or more persons are jointly accused,* 70 ALR 1171." (Footnotes omitted.)

So the question becomes, what constitutes an antagonistic defense. This defendant, Calvin Lewis McGilmer, did not present any affidavit in opposition to the prosecution's motion for joinder. Counsel for his brother, that is, counsel for Norman McGilmer, did present an affidavit in opposition. His attorney preliminarily argued that:

"Defendant recognizes that it would not be an abuse of discretion for this Court to grant prosecution's motion for consolidation of trials if the defendant did not provide a supporting affidavit."

Thereafter, by affidavit and by oral argument on the motion, counsel for defendant Norman McGilmer presented the argument that although Norman would not take the stand and would not present testimony or evidence, he, that is counsel, would argue that Norman was not the dark complected black man seen by the witness, it was Calvin. Calvin's counsel presented no argument against joinder except this statement:

"*Mr. Burgess:* Your Honor, I had not been involved in this, but I did inform the Court at the last hearing that I would be in support of the denial for the motion to consolidate and join Mr. Ferris in his motion."

In denying the motion the court ruled:

"Both the defendants can refuse to take the stand, and then there wouldn't be any conflict. If one takes the stand, I don't know if he would necessarily accuse the other."

And what followed was as predicted. Calvin took the stand and testified. He gave evidence, but he did not implicate his brother. He exculpated himself and his brother. Before he testified his counsel addressed the jury as follows:

"I represent Calvin McGilmer. You have heard the statements of Mr. Blixt [prosecutor], statements of Mr. Ferris [counsel for Norman McGilmer] and I would again tell you that those are not evidence. My statements are not evidence. The evidence you're going to have to consider is the evidence that is presented from the witness stand, and the exhibits and stipulations in this case."

The evidence presented on behalf of Norman was constituted only of testimony of a police sergeant and two exhibits which were photographs of each defendant. Thereafter, the defense of Norman Mc-Gilmer rested and Calvin McGilmer took the witness stand. He testified that he and his brother picked up a couple of girls at the Detroit bus station and took them to Ann Arbor and were directed by one of the girls to a parking lot in the Arrowwood Complex, arriving a little before 10 p.m., whereupon the brothers separated. He said thereafter that while he was sitting in the car "a

guy came out and started to get in his car and started talking to me". This unknown person then asked Calvin for a ride because he had a flat and Calvin gave him a ride to a store and brought him back and let him off in the lot. The man gave him some change, mostly in nickels and dimes in exchange for this favor, and Calvin bought a bag containing a headphone and earphone component set from this man. Thereafter, Calvin located his brother and the other suspect at a house of some friends and took off in the car. They were momentarily stopped by the police. Following Calvin's cross-examination he rested his case.

The testimony later developed that the brothers and Martin Baxter were apprehended a short distance from the apartment complex by police officers answering a call as to the breaking and entering. Martin Baxter successfully avoided prosecution but was subpoenaed to testify at trial and, although he was a reluctant witness, his testimony detailed the brothers having broken into the apartment with the use of a tool they used to pry a sliding glass door off its track. The defendants were further implicated by the inhabitants of the adjoining apartment who called the police and by the police officers who apprehended them within three or four minutes of their having been dispatched. The headphones and camera taken from the burglarized apartment were in the vehicle; the camera in the back seat and the headphones in the front seat. A substantial quantity of nickels and dimes found on defendant Calvin McGilmer were linked to the items missing from the burglarized apartment.

We do not think the defenses were antagonistic. A fair reading of this record puts both Calvin and Norman at the scene of the crime, identified and

apprehended with the fruits of the burglary. The suggestion that it was a finger-pointing match between the brothers was a sham totally injected by counsel's argument and unsupported by actual or proffered testimony or exhibits.

In *People v Dunlap,* 87 Mich App 528; 274 NW2d 62 (1978), this Court held that severance was not required where an allegation of antagonistic defenses was not supported either by citing previous antagonistic statements made by the codefendant or by making an offer of proof on the point. *People v Smith,* 73 Mich App 463; 252 NW2d 488 (1977), held that a supporting affidavit defining the inconsistencies between the defenses of the parties is required before this Court will find an abuse of discretion in not ordering separate trials. Norman McGilmer never testified against Calvin, nor was an offer of proof made out of the presence of the jury so that the court could make an informed decision. We believe this case is distinguishable from *People v Webb,* 82 Mich App 182; 266 NW2d 483 (1978), *lv den* 404 Mich 809 (1978), wherein the testimony of each defendant clearly implicated the other.

Affirmed.

M. F. CAVANAGH, J., concurred.

CYNAR, J. *(dissenting).* I am in full agreement with the majority as to the disposition of the first two issues raised by defendant. However, whether or not the defendant was entitled to a severance of his trial is a close and perplexing problem.

Sometime before trial, counsel for codefendant Norman McGilmer filed an affidavit in support of his motion in opposition to consolidating the trial of Norman McGilmer with that of his brother Calvin McGilmer. Counsel claimed that if consoli-

dation were granted, as attorney for defendant Norman McGilmer he would argue that the case against Calvin McGilmer was very strong; therefore, to consolidate the trials would also serve to greatly prejudice Norman because of the jury's natural inclination to associate Norman with his obviously guilty brother Calvin. Calvin McGilmer made no written motion nor filed any affidavit but orally moved opposing consolidation.

The suggestions that the finger-pointing by Norman McGilmer against his brother was a sham bears careful consideration since counsel for Norman McGilmer acknowledged a refusal by his client to take the witness stand and accuse his brother Calvin while he was on trial with him. However, in the next breath, so to speak, Norman McGilmer did in effect testify against his brother through his attorney's accusations in his opening statement and in closing argument to the jury.

The position of Calvin McGilmer was not antagonistic to Norman McGilmer. The sole witness called by defendant Norman McGilmer was a police officer who testified regarding booking pictures of that defendant which apparently had been labeled with the wrong name. The antagonism claimed by Norman McGilmer sprang from the words of his counsel, who declared in his opening statement:

"[T]he government will prove Calvin McGilmer guilty beyond a reasonable doubt, and I stand here accusing Calvin McGilmer of being guilty beyond a reasonable doubt. There is direct evidence implicating him in this crime. Mr. Blixt did not mention it, but Mr. McGilmer was found with coins, a number of dimes and nickels on him that Mr. Schatz or Shots [sic] will say came, or Mr. Hohmann will say came from his apartment, therefore I ask you don't hold this against Norman McGilmer.

"The People will show that Calvin McGilmer was present at the scene and that he had stolen property on his person when he was stopped."

In closing argument, counsel for Norman McGilmer argued:

"The case against Calvin McGilmer is a very, very strong one."

These mere conclusionary, arguable allegations of antagonistic defenses made by counsel for Norman McGilmer should not inure to the benefit of Norman McGilmer. The opening statement in its simplest form was not only argument but in great part argument by counsel for Norman McGilmer on behalf of the people against Calvin McGilmer. Based on what was presented to the trial court the rulings which first granted consolidation and later denied severance were not erroneous. Surely something more should have been proffered to support an antagonistic defense; else such bare allegations might become standard fare in future joint criminal trials. However, no matter how analyzed, the remarks in the opening statement and in closing argument by counsel for Norman McGilmer were of such a nature as to leave this writer with the impression that Calvin McGilmer was greatly prejudiced thereby. In addition, I am unable to *legally* conclude Calvin McGilmer was involved in a scheme to present the alleged antagonistic defense on behalf of Norman McGilmer. I would reverse and remand for a new trial.