PEOPLE v HOLLY

PEOPLE v PEARSON

Docket Nos. 58429, 59282. Submitted October 14, 1982, at Lansing.—
Decided October 10, 1983.

Kenneth D. Holly and Barry B. Pearson were convicted of armed
robbery following a joint jury trial in Genesee Circuit Court,
Donald R. Freeman, J. On the eve of trial, counsel for each
defendant discovered that the codefendant intended to testify
so as to exculpate himself at the expense of inculpating the
other. Counsel for defendant Pearson submitted a motion for
separate trials together with an affidavit containing a general
averment of inconsistent defenses. Defendants were not permit-
ted to make an offer of proof to support the allegation of
inconsistent defenses, and the trial court denied the motion for
severance. At trial, defendant Holly testified that Pearson was
the organizer and sole perpetrator of the crime in question.
Defendant Pearson testified and denied being involved in the
robbery. During the cross-examination of a police officer, the
officer testified, in a nonresponsive answer, that defendant
Holly had made statements to him relative to other crimes in
which Holly had been involved. Defense counsel moved for a
mistrial based on the officer's testimony. The motion for a
mistrial was denied by the trial court. Each defendant ap-
pealed. The appeals were consolidated for consideration. Held:

1. Generally, a criminal defendant does not have a right to a

REFERENCES FOR POINTS IN HEADNOTES

[1-7, 12] 59 Am Jur 2d, Parties §§ 95 et seq., 105, 106.
    75 Am Jur 2d, Trial §§ 20, 21.
    Antagonistic defenses as ground for separate trials of codefendants
        in criminal case. 82 ALR3d 245.
[7, 12] 75 Am Jur 2d, Trial § 17.
[8] 5 Am Jur 2d, Criminal Law §§ 774, 783, 867.
[9] 81 Am Jur 2d, Witnesses §§ 435, 437.
    Effect of voluntary statements damaging to accused, not proper
        subject of testimony, uttered by testifying police or peace officers.
        8 ALR2d 1013.
[10, 11] 29 Am Jur 2d, Evidence § 320.
[11] 5 Am Jur 2d, Appeal and Error § 806.
    29 Am Jur 2d, Evidence § 254.

separate trial. A motion for severance is addressed to the discretion of the trial court and will not be granted absent a showing of prejudice to a substantial right of the defendant by a joint trial. Such showing of prejudice, generally, must be set forth in an affidavit accompanying the motion for severance which details the inconsistencies of the defenses. Where, as here, the circumstances make such a detailing of the inconsistencies in an affidavit impractical, justice may require that the defendant be given the opportunity to establish the requisite prejudice by an offer of proof.

2. Because defense counsel became aware of the antagonistic defenses only shortly before trial and because there were no prior inconsistent statements by the defendants, the trial court abused its discretion in refusing to hear the offer of proof as to the question of inconsistent and antagonistic defenses.

3. Reversal is mandated only where the defense of a codefendant is antagonistic to the defense raised by the defendant. Since the defense raised by Holly was, in fact, antagonistic to the defense raised by Pearson, *i.e.,* Holly's testimony inculpated Pearson, the failure to grant a separate trial did prejudice Pearson. Accordingly, Pearson's conviction must be reversed.

4. While Pearson's defense differed from Holly's defense, it was not antagonistic to Holly's defense. The failure to grant separate trials did not prejudice Holly; accordingly, reversal of Holly's conviction is not mandated by reason of the failure of the trial court to grant separate trials.

5. The unresponsive and inadmissible testimony of the police officer relative to other crimes committed by Holly was clearly prejudicial. Reversal is not mandated, however, since the evidence against Holly was substantial and, even if that testimony had not been given, a jury would not have voted to acquit him.

Affirmed as to defendant Holly; reversed as to defendant Pearson.

J. H. GILLIS, J., concurred with the affirmance as to defendant Holly but dissented from the reversal as to defendant Pearson. He would hold that the pleadings and record fail to establish an abuse of discretion on the part of the trial court in denying the motion for severance. He would affirm as to both defendants.

OPINION OF THE COURT

1. CRIMINAL LAW — TRIAL — JOINT TRIALS.
  Joinder of criminal defendants for trial is usually within the discretion of the court; the general rule is that a defendant

does not have a right to a separate trial (MCL 768.5; MSA 28.1028).

2. CRIMINAL LAW — TRIAL — JOINT TRIALS — SEVERANCE — PREJU-
DICE — AFFIDAVIT — OFFER OF PROOF.

Michigan has a strong policy favoring joint trials and severance will not be granted unless the defendant makes an affirmative showing that his substantial rights will be prejudiced; an allegation of prejudice based upon antagonistic defenses normally must be supported by an affidavit detailing the inconsistencies of the defenses of the codefendants, however, where the circumstances and a strict application of the affidavit rule would result in a miscarriage of justice, a defendant should be permitted to make an offer of proof on the question of prejudice arising from inconsistent defenses.

3. CRIMINAL LAW — TRIAL — JOINT TRIALS — SEVERANCE.

A defendant is entitled to a trial separate from a codefendant who, it appears, may testify to exculpate himself and incriminate the defendant seeking a separate trial.

4. CRIMINAL LAW — TRIAL — JOINT TRIALS — SEVERANCE — OFFER
OF PROOF — JUDICIAL DISCRETION — APPEAL — PREJUDICE.

It is an abuse of discretion for a trial court to refuse to hear an offer of proof on the question of prejudice resulting from the inconsistent defenses of jointly tried criminal defendants and to refuse to consider the question of severance where, under the circumstances, the antagonistic nature of the defenses became known only shortly before trial so that an offer of proof rather than an affidavit detailing the inconsistent natures of the defenses was an appropriate way to place the question of the prejudice resulting from a joint trial before the trial court; however, the defendants' convictions will not be disturbed on appeal absent a showing that the joint trial did, in fact, prejudice the substantial rights of the defendants.

5. CRIMINAL LAW — TRIAL — BURDEN OF PROOF.

A criminal trial should not be a contest between codefendants in which the prosecution stands by and watches the codefendants accuse each other; it is the prosectuion which carries the burden of proof and this burden should not be taken lightly.

6. CRIMINAL LAW — TRIAL — JOINT TRIALS.

Reversal is mandated where a criminal defendant's motion to sever his trial from that of a codefendant is denied and the codefendant thereafter testifies that the defendant making the motion for severance was involved in the criminal act which

resulted in the criminal prosecution while the defendant testifies that he was not involved in that criminal act, since prejudice to the defendant is shown under those circumstances.

7. CRIMINAL LAW — TRIAL — JOINT TRIALS.

Reversal of a criminal conviction is not mandated on the ground that the trial court erred in refusing to grant a motion for separate trials where the defense offered by a codefendant is different from that of the defendant but that different defense is not antagonistic to the defense of the defendant and the testimony of the codefendant does not in and of itself shed any light on the defendant's involvement in the crime, since prejudice is not established under such circumstances.

8. CRIMINAL LAW — MISTRIAL — APPEAL.

The denial of a motion for a mistrial in a criminal case rests within the sound discretion of the trial court and will not be reversed on appeal absent an affirmative showing that the denial of the motion was so grossly in error that it deprived the defendant of a fair trial or amounted to a miscarriage of justice.

9. CRIMINAL LAW — WITNESSES — UNRESPONSIVE ANSWER — POLICE OFFICERS — APPEAL.

A volunteered and unresponsive answer of a witness to a proper question, generally, is not cause for granting a mistrial; however, where such an unresponsive remark is made by a police officer, the Court of Appeals will give special scrutiny to the testimony to make sure that the officer did not venture into forbidden areas which might prejudice the criminal defendant, since police witnesses have a special obligation not to venture into such forbidden areas.

10. CRIMINAL LAW — EVIDENCE — OTHER CRIMES.

Inadmissible evidence tying a criminal defendant to other crimes is deemed to be highly prejudicial to the defendant.

11. CRIMINAL LAW — EVIDENCE — HARMLESS ERROR.

Reversal of a criminal conviction is not mandated by the admission of prejudicial inadmissible testimony where the evidence against the defendant is substantial and it can be said that, even without the prejudicial inadmissible testimony, the jury would not have acquitted the defendant.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY J. H. GILLIS, J.

12. CRIMINAL LAW — JOINT TRIALS — SEVERANCE — JUDICIAL DISCRE-
TION.

    *It is not an abuse of discretion for a trial court to deny a motion
to sever the trials of criminal codefendants where the affidavit
accompanying the motion for severance contained only a gen-
eral averment that each defendant would testify to exculpate
himself and inculpate the other, but neither the affidavit nor
the argument on the motion for severance specifically defined
the nature of the alleged inconsistencies in the defendants'
defenses.*

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Robert E. Weiss,* Prose-
cuting Attorney, *Donald A. Kuebler,* Chief, Appel-
late Division, and *Edwin R. Brown,* Assistant Pros-
ecuting Attorney, for the people.

*David M. Hartsook,* for defendant Holly.

*Roger A. Lange,* for defendant Pearson.

Before: D. E. HOLBROOK, JR., P.J., and J. H. GIL-
LIS and M. E. DODGE,* JJ.

M. E. DODGE, J. Following a joint jury trial,
codefendants were each found guilty of armed
robbery, MCL 750.529; MSA 28.797. Defendants
appeal as of right.

Defendants first argue that the trial court incor-
rectly denied their motion for separate trials. Gen-
erally, a defendant does not have a right to a
separate trial; joinder is usually within the discre-
tion of the trial court. MCL 768.5; MSA 28.1028;
*People v Hurst,* 396 Mich 1; 238 NW2d 6 (1976). In
fact, strong policy exists favoring joint trials and a
defendant must make an affirmative showing that
his substantial rights will be prejudiced before he
is entitled to severance. *People v Dunlap,* 87 Mich
App 528; 274 NW2d 62 (1978). Such a showing of

    * Circuit judge, sitting on the Court of Appeals by assignment.

prejudice must be supported by an affidavit defining the inconsistencies between the defenses of the parties. *People v Smith,* 73 Mich App 463; 252 NW2d 488 (1977), *lv den* 402 Mich 803 (1977).

Clearly in the present case, there were no affidavits supporting the severance motion which defined the inconsistencies between the respective defenses. However, the record establishes that not until the eve of trial did counsel even discover that the codefendants would testify, as neither had testified at the preliminary examination and all indications were that they would not testify at trial. Upon learning at this late date that each codefendant would testify to exculpate himself at the expense of inculpating the other, counsel for defendant Pearson submitted a motion for separate trials together with an affidavit containing a general averment of inconsistency.

While this Court adheres to the mandate in *Smith* which requires an affidavit defining the inconsistencies between the respective defenses, a strict application of that rule would result in a miscarriage of justice under the facts established on the record in this case.

In *People v McGilmer,* 96 Mich App 433, 439; 292 NW2d 700 (1980), the Court, citing *Dunlap, supra,* held "that severance was not required where an allegation of antagonistic defenses was not supported either by citing previous antagonistic statements made by the codefendant *or by making an offer of proof on the point".* (Emphasis added.) Considering the late date at which counsel received notice that a separate trial might be needed (due to the fact neither defendant had earlier testified or indicated a willingness to testify), the citing in an affidavit of previous antagonistic statements made by a codefendant would

have been a virtual impossibility. Therefore, the defendants should have been permitted the opportunity to make the offer of proof they requested.

A defendant is entitled to a trial separate and apart from a codefendant who it appears will testify to exculpate himself at the expense of incriminating the defendant seeking a separate trial. *People v Hurst, supra; People v Webb,* 82 Mich App 182; 266 NW2d 483 (1978), *lv den* 404 Mich 809 (1978).

Therefore, based on the above described circumstances, the trial court abused its discretion in refusing the proffered testimony on behalf of both defendants. However, while the trial court abused its discretion in refusing the proffered testimony, defendants' convictions will not be disturbed on appeal in the absence of an affirmative showing that a joint trial did in fact prejudice the substantial rights of the defendants. *People v Bedford,* 78 Mich App 696; 260 NW2d 864 (1977).

Each defendant testified at trial on his own behalf as summarized below.

*Kenneth Duane Holly testified:*

On July 28, 1980, defendant Holly was on his front porch talking with defendant Pearson and one Patrick Williams. Pearson suggested getting some money so they went to Pearson's house and got his car. Shortly after Pearson started to drive off, he pulled over and left the car for a few minutes, leaving Holly and Williams inside. When Pearson returned, he suggested a place they could rob and pulled out a gun and handed it to Williams, who in turn handed it to Holly, who placed it in his pants because he saw a police car. After deciding not to rob a 7-11 store at which they had stopped, they proceeded to a gas station where Pearson dropped off Holly and Williams. Pearson

then proceeded around the block and parked. When Pearson arrived he asked why they had not committed the robbery at the station and then told Williams to stay with the car while he and Holly went inside. Pearson told Holly that once inside, if everything was alright, he would nod his head and Holly would then pull the gun. After entering the station Pearson asked for a fuse and then twice said: "Pull the gun." When Holly did not, Pearson pulled the gun from under Holly's shirt and committed the robbery. Pearson then ordered the attendant outside. When the three got outside, Holly ran to the car and lay in the back seat with Williams. When Pearson got in the car he told them to stay down or he would shoot them. They drove back to Pearson's father's home where they divided the money. Holly put the money in a truck and then the police arrived.

*Barry Bernard Pearson testified:*

Around 4:00 p.m. on July 28, 1980, Pearson met with Holly and Williams and they gambled for a while in the park. Holly wanted to borrow Pearson's car to go to the hospital and snatch a purse because it was nurses' payday. Pearson loaned his car to Williams for an hour and Williams and Holly left together in the car. Pearson went to his father's home since he had told Williams to return the car to that location. When Holly and Williams returned, they gave Pearson $13 and his car keys. Shortly thereafter, someone kicked the door and Williams ran upstairs and said, "There is the police." Williams threw a .32-caliber gun into the room into which Holly had shut himself. Pearson denied driving to the gas station or being involved in the robbery.

A reading of each defendant's testimony reveals that the joint trial did prejudice the substantial

rights of defendant Pearson. Defendant Pearson's defense was based on total noninvolvement in the armed robbery; he claimed he merely loaned his car to Williams and Holly with instructions to return it to his father's home at a later time. Holly's testimony, however, explicitly pointed the finger at Pearson. While Holly did not deny carrying the gun into the station with a knowledge that a robbery was contemplated, he claimed Pearson was the organizer and sole perpetrator of the crime in question, a defense clearly contrary and antagonistic to Pearson's defense.

A trial should not be a contest between the defendants in which the prosecution stands by and watches the defendants accuse each other. It is the prosecution which carries the burden of proof and this burden should not be taken lightly. *People v Millard,* 53 Mich 63; 18 NW 562 (1884). See, also, *Coffin v United States,* 156 US 432; 15 S Ct 394; 39 L Ed 481 (1895). While there was ample other testimony implicating defendant Pearson at trial, one of the station attendants, Stewart Brower, was unable to identify the defendants. The other attendant, Larry Reed, while identifying the defendants at trial, was initially unable to pick them out in police pictures.

After denial of Pearson's motion for separate trials, it does not matter that the determination of the effect, if any, of Holly's finger-pointing is conjectural; any set of circumstances sufficient to deprive a defendant of a fair trial if tried jointly requires severance. See *Hurst, supra.*

Defendant Pearson's testimony, however, does not have the same impact on defendant Holly's defense. The essence of Pearson's testimony was that he loaned Williams and Holly his car, but as to where they went or what they did, Pearson

pointed no finger at Holly in regard to the crime in question. In fact, Pearson testified that Holly denied driving to the gas station or being involved in the robbery. While Pearson's testimony differs from Holly's, it is not antagonistic to Holly's defense of unwilling participation in the armed robbery. Pearson never even mentioned the armed robbery in his testimony, except to say that Holly denied its commission.

Merely because Holly pointed his finger at Pearson does not mean Pearson's testimony was antagonistic. Pearson's testimony in and of itself shed no light on Holly's involvement in the Sam's Standard Station armed robbery.

Where defenses of codefendants differ, but are not antagonistic, reversal is not mandated. *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976).

Defendant Holly next claims that the trial judge erred in denying his motion for a mistrial. The motion was based upon an allegedly nonresponsive answer elicited from a police officer during cross-examination. During cross-examination by defense counsel, the following colloquy occurred:

"*Q.* All right, sir. Now I wonder if you can recall any other things that he might have said other than what are right down here on this paper.

"*A.* Yes, sir.

"*Q.* Did he say things other than that were here on the paper that you didn't write down?

"*A.* Yes, sir. He did.

"*Q.* How did you choose what to put down on the paper and what not to put down?

"*A.* Well, he was talking about other armed robberies that he knew about that other people had committed and he was part of.

"*Q.* And what?

"*A.* That he was a part of.

"*Q.* He implicated himself in other robberies?

"*A.* Yes, sir. He did.

"*Q.* How many?

"*A.* At least one other.

"*Q.* And when was that?

"*A.* That was in early 1980 or late 1979.

"*Q.* You didn't write that down, did you, sir?

"*A.* I think I've got it on another piece of paper, maybe on the back of one of these notes or something.

"*Q.* I see."

Defense counsel's motion for a mistrial was denied. Because no curative instruction was requested, none was given.

A denial of a motion for mistrial rests within the sound discretion of the trial court and, absent an affirmative showing of prejudice to the defendant's rights, such exercise of discretion will not be reversed on appeal. *People v Kramer,* 103 Mich App 747; 303 NW2d 880 (1981). Error requiring reversal results only where a trial judge's denial of a defendant's motion for mistrial is so grossly in error as to deprive a defendant of a fair trial or to amount to a miscarriage of justice. *People v Marsh,* 108 Mich App 659; 311 NW2d 130 (1971), *cert den* — US —; 103 S Ct 119; 74 L Ed 2d 104 (1982).

Generally, a volunteered and unresponsive answer to a proper question is not cause for granting a motion for mistrial. *People v Kelsey,* 303 Mich 715; 7 NW2d 120 (1942); *People v Stinson,* 113 Mich App 719; 318 NW2d 513 (1982), *lv den* 417 Mich 957 (1983). However, when an unresponsive remark is made by a police officer, this Court will scrutinize that statement to make sure the officer has not ventured into forbidden areas which may prejudice the defense. *People v Page,* 41 Mich App 99; 199 NW2d 669 (1972). Police witnesses have a

special obligation not to venture into such forbidden areas. *People v McCarver (On Remand),* 87 Mich App 12, 15; 273 NW2d 570 (1978), *lv den* 406 Mich 964 (1979). The police officer's original response was clearly nonresponsive. Being a police sergeant and the officer in charge of the case, he should have known better than to volunteer such information. Inadmissible evidence tying a defendant to other crimes is highly prejudicial. *People v Deblauwe,* 60 Mich App 103; 230 NW2d 328 (1975). This impact is not lessened merely because it was the defense counsel, rather than the prosecutor, to whom the officer gave the nonresponsive answer.

In the present case, the evidence was especially prejudicial. Holly testified that he was not actually involved in the robbery, but did what he did because he feared Pearson. His story's believability is substantially reduced if one knows that Holly previously participated in other armed robberies.

However, despite the undeniable prejudice of the testimony, we affirm Holly's conviction. The evidence against him was simply too strong. Both attendants at the gas station testified that, after Holly and Pearson left the station office, Holly told Pearson to "shoot one of them". Although Holly testified that he did not remember saying anything at that time, he did admit that he was present at the robbery. After the men returned home, Holly received $35 as his share of the stolen money. Finally, after being apprehended, Holly confessed to the police that he, a man named Rerun, and another man went to a gas station to rob the station. Holly stated that he brought the gun into the station and handed it to the third man, and that then "the robbery went down". In light of this evidence, it is not reasonably possible that, had the trial been free of the error, any jury would have voted to acquit defendant Holly. *People v*

*Bailey,* 101 Mich App 144, 152; 300 NW2d 474 (1980).

We find defendant Holly's other claims of error to be without merit.

Affirmed as to defendant Kenneth Duane Holly; reversed and remanded as to defendant Barry Bernard Pearson.

D. E. HOLBROOK, JR., P.J., concurred.

J. H. GILLIS, J. *(concurring in part, dissenting in part).* For the reasons set out below, I concur in the affirmance of defendant Holly's conviction and dissent from the reversal of defendant Pearson's conviction.

Defendants assign as error the trial court's denial of their motion for severance. This Court in *People v American Medical Centers of Michigan, Ltd,* 118 Mich App 135, 145; 324 NW2d 782 (1982), recently summarized the law governing a defendant's motion for separate trials:

"Defendants do not have an absolute right to separate trials; rather there is a strong policy favoring joint trials. *People v Carroll,* 396 Mich 408, 414; 240 NW2d 722 (1976). When moving for severance, the defendant must clearly, affirmatively, and fully show that his 'substantial rights' will be prejudiced by joint trial. *Id.,* 414; *People v Kramer,* 103 Mich App 747, 753; 303 NW2d 880 (1981). Where defendants' separate defenses are antagonistic, severance should be granted. *People v Hurst,* 396 Mich 1, 6; 238 NW2d 6 (1976); *Kramer, supra,* 753. A conclusory statement of antagonistic defenses must be supported by an affidavit defining the inconsistencies between defenses. *People v Kramer,* 108 Mich App 240, 256; 310 NW2d 347 (1981). Where a defendant fails to show prejudice to his substantial rights, the competing interest of benefit to the courts, the public, and the administration of justice from join-

der comes into play. *People v Clark,* 85 Mich App 96, 101; 270 NW2d 717 (1978). Finally, we will not reverse a trial court's decision concerning joint trials unless there has been an abuse of discretion by the trial court. MCL 768.5; MSA 28.1028; *Carroll, supra,* 414."

In the case at bar, the affidavit contained a general averment that each defendant would testify to exculpate himself and inculpate the other, but did not specifically define the alleged inconsistencies between the defenses. Nor were these alleged inconsistencies ever specifically defined during argument on the motion for severance. I would conclude that the trial court did not abuse its discretion in denying severance, and would affirm both convictions.