*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JARRETT DELMAR BEESLEY,

Defendant-Appellant.

FOR PUBLICATION
April 22, 2021
9:10 a.m.

No. 348921
Wayne Circuit Court
LC No. 19-000056-01-FC

Before: TUKEL, P.J., and JANSEN and CAMERON, JJ.

TUKEL, P.J.

Defendant appeals as of right his jury trial conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b (multiple variables),[1] unlawful imprisonment, MCL 750.349b, and domestic violence, MCL 750.81(2).[2] Defendant was sentenced to concurrent terms of 7 to 20 years' imprisonment for CSC-I and 2 to 15 years' imprisonment for unlawful imprisonment, as well as a term of 65 days in jail, time served, for domestic violence. On appeal, defendant argues that the trial court erred by denying his motion for a mistrial following testimony by a police officer regarding defendant's criminal history. Defendant additionally argues that the trial court erred by

---

[1] The felony information charged defendant with engaging in penetration under the following circumstances: "[D]uring the commission of the felony of home invasion and/or unlawful imprisonment and/or defendant was armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon[.]" The trial court instructed the jury consistently with the felony information. When rendering its guilty verdict, the jury did not clarify upon which theory it convicted defendant of CSC-I.

[2] The prosecution also charged defendant with first-degree home invasion, MCL 750.110a(2), assault with a dangerous weapon (felonious assault), MCL 750.82, and four counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The jury acquitted defendant of these charges.

sentencing him, in part, based on acquitted conduct. We disagree and therefore affirm defendant's convictions and sentence.

## I. UNDERLYING FACTS

This case arises from an altercation between defendant and the victim, his wife. Defendant and the victim were living separately when the incident occurred. On the evening in question, the victim arrived home to her apartment and discovered defendant inside, uninvited. According to the victim, defendant had a gun and repeatedly threatened to kill the victim and himself. At one point, defendant grabbed the victim by the throat. The victim testified that she attempted to calm defendant down for several hours and complied with everything defendant asked of her out of fear for her own safety. The victim further testified that her compliance with defendant's directives included having sex with defendant, taking a shower with defendant the following morning, and accompanying defendant to get coffee the morning after the incident occurred. The victim stated that she wanted to escape from defendant throughout the entirety of the encounter, but was too afraid to do so.

During the victim's testimony at trial, defense counsel asked her when she and defendant had last been physically intimate before the incident occurred. The victim responded that her sexual relationship with defendant "ended the weekend that, I don't know if I can say, but he had to go to jail for a weekend for violation of probation. When he got out of jail I believe that was the end of the intimacy . . . ." Defense counsel did not object to this response.

The following day of trial, Detective Joseph Carr of the Wyandotte Police Department testified that he executed the search warrant of defendant's home after the victim reported the incident. On redirect examination, the following exchange occurred:

> [*The prosecutor*]: So you went through all those steps before SWAT [(Special Weapons and Tactics)] just came and knocked [defendant's] door down?
>
> [*Detective Carr*]: Prior to the execution of the search warrant we had a briefing with the SWAT team which we went over the circumstances of the case and some of [defendant's] criminal history.

Defense counsel immediately objected and subsequently moved for a mistrial. The trial court denied defendant's motion for a mistrial but offered to give a curative jury instruction and to strike Detective Carr's answer. Defense counsel chose to recross-examine Detective Carr in lieu of the trial court striking the answer. The trial court also provided a curative jury instruction, and defense counsel expressed satisfaction with the instruction. Defendant was then convicted and sentenced as detailed earlier. This appeal followed.

## II. MOTION FOR A MISTRIAL

Defendant argues that Detective Carr's testimony about his criminal history was so prejudicial that the trial court erred by denying defendant's motion for a mistrial. We disagree.

## A. STANDARD OF REVIEW

We review a trial court's denial of a motion for a mistrial for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "This Court will find an abuse of discretion if the trial court chose an outcome that is outside the range of principled outcomes." *Id*. "A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017) (quotation marks and citation omitted). Thus, "[f]or a due process violation to result in reversal of a criminal conviction, a defendant must prove prejudice to his or her defense." *Id*. (quotation marks and citation omitted). And the extent of the prejudice is a critical factor: "Further, the moving party must establish that the error complained of is so egregious that the prejudicial effect can be removed in no other way." *Id*. (quotation marks and citation omitted); *People v Caddell*, ___Mich App ___, ___; ___ NW2d ___ (2020) (Docket no. 343750); slip op at 4 (same).

## B. ANALYSIS

Defendant relies heavily on *People v Holly*, 129 Mich App 405, 415; 341 NW2d 823 (1983), a pre-November 1, 1990 case from this Court, which therefore lacks precedential authority. See MCR 7.215(J)(1). In *Holly*, a police officer was asked on cross-examination whether the defendant had said anything more than what the officer had written down regarding the statement. The officer responded that Holly had admitted involvement in at least one other armed robbery. *Id*. at 414-415. This Court reasoned that "[W]hen an unresponsive remark is made by a police officer, this Court will scrutinize that statement to make sure the officer has not ventured into forbidden areas which may prejudice the defense. Police witnesses have a special obligation not to venture into such forbidden areas." *Id.* at 415-416. The Court further added that "Being a police sergeant and the officer in charge of the case, he should have known better than to volunteer such information. Inadmissible evidence tying a defendant to other crimes is highly prejudicial." *Id*. at 416.

*Holly* has been cited by a handful of published opinions; no majority opinion in any of those decisions has cited *Holly* for its view of the "special obligation" police witnesses have to avoid testifying about "forbidden areas," such as a defendant's criminal history. We think *Holly*'s analysis is faulty, and we expressly reject it. The proper analysis for a motion for mistrial depends principally, if not exclusively, on whether a defendant has been prejudiced by an irregularity or error.

After its statement regarding the "special obligation" of police witnesses, *Holly* in fact ignored most of what it had said about improper police testimony, and engaged in what was essentially a proper analysis focused on prejudice; consequently, the Court upheld the conviction.[3] The Court stated that "In the present case, the evidence was especially prejudicial. [The defendant]

---

[3] The Court reversed the conviction of the codefendant, but on the grounds of improper denial of a severance. *Id*. at 412-413.

testified that he was not actually involved in the robbery, but did what he did because he feared Pearson [the codefendant]. His story's believability is substantially reduced if one knows that [the defendant] previously participated in other armed robberies." *Id*. at 416. Nevertheless, the Court affirmed Holly's convictions: "However, despite the undeniable prejudice of the testimony, we affirm [the defendant's] conviction. The evidence against him was simply too strong." *Id*.

*Holly*'s analysis demonstrates the weakness of its statements about what it termed improper police officer testimony. This Court determined that police officer testimony about Holly's participation in other robberies was prejudicial error but not reversible error. That conclusion about the ultimate effect on the verdict of any improper officer testimony was not affected by the fact that the testimony had been given by a police officer. An analysis of prejudice focuses on the effect of what took place (the hearing of improper testimony), rather than whether an officer had acted improperly in testifying to certain facts; in other words, in *Holly*, it was the disclosure of defendant's criminal history or involvement in other robberies which prejudiced him, not the identity of the witness who testified to those facts. *Holly* gave no reason in support of evaluating an officer's testimony for impropriety under a different standard than would be used to evaluate any other witness's testimony; it certainly cannot be because a jury is more likely to believe an officer's testimony, as the law provides, and juries are instructed, that an officer's testimony is to be judged "by the same standards you use to evaluate the testimony of any other witness." M Crim JI 5.11 (Police Witness).

The facts of this case bear out the deficiencies in *Holly*'s analysis. In this case, defendant's wife testified that he had been jailed for a probation violation. If the jury's verdict would have been affected because that testimony was "so egregious that the prejudicial effect can be removed in no other way," than by the granting of a mistrial, *Dickinson*, 321 Mich App at 18, then the identity of the witness who provided the testimony would not matter. Indeed, it will often be family members and close associates of a defendant who are most familiar with facts regarding a defendant's criminal activity. Yet, as the holding in *Holly* demonstrated, the case turned on the fact that the other evidence was "simply too strong" for the defendant to have been prejudiced; it did not matter to the final result that the testimony had been provided by a police officer, because the testimony did not affect the verdict. Indeed, if such testimony had instead been given by the defendant's wife, as in this case, it would not have obviated the necessity of determining whether the testimony had prejudiced the defendant.

*Holly* had other flaws as well. While we agree wholeheartedly that police witnesses (and all witnesses) have an obligation not to venture into forbidden areas of testimony, *Holly*, 129 Mich App at 415-416, the key point is in regards to testimony which is "forbidden." An area of testimony is only "forbidden" if the court rules it inadmissible. While many things, including a defendant's criminal history, are generally inadmissible, there are exceptions for all such rules. By way of example, in certain instances, "evidence of other crimes, wrongs, or acts" of a defendant are admissible. MRE 404(b). When a defendant testifies, his or her criminal history may be admissible for impeachment purposes. MRE 609(a)(2). *Holly* erred by creating a blanket assumption that a police officer will in all instances know precisely what has been ruled admissible and what has been ruled "forbidden." While it will sometimes be true that a police officer will know precisely what has been deemed inadmissible, it is not invariably so. We suggest that it would be a good practice for a trial court ruling on the admissibility of testimony to instruct the

prosecutor to inform the officer regarding what has been ruled inadmissible prior to an officer's testimony.

Applying the principles governing a motion for mistrial here, we conclude that defendant was not prejudiced by the officer's testimony. As discussed earlier, defendant's criminal history was referenced twice at trial. The first mention of criminal history was when the victim mentioned it, in response to defense counsel's question asking when she and defendant stopped having an intimate relationship. In response to that question, the victim testified that the turning point was when defendant had gone to jail for the weekend due to a probation violation. Defense counsel did not object to this testimony. The victim's testimony implicitly informed the jury that defendant had a criminal record, but no specific details were offered. Defendant's criminal history was then addressed a second time by Detective Carr, who testified that the SWAT team reviewed "some of [defendant's] criminal history" before it attempted to apprehend defendant at his home. Detective Carr's testimony had the potential to prejudice defendant, but two remedies were used at trial to mitigate any prejudicial effect of the detective's testimony.

First, the trial court offered to strike Detective Carr's testimony, but defense counsel chose a different remedy, electing instead to question Detective Carr about defendant's criminal history. During this cross-examination, Detective Carr testified that defendant did not have a criminal record of convictions for domestic violence, violence against women, or anything "involving firearms." Second, prior to deliberations, the trial court instructed the jury to disregard all comments regarding defendant's possible criminal history, stating:

> You have heard evidence that the defendant may have a criminal history. You are not to consider this evidence at all in your deliberations. To repeat once more, when determining the facts and evidence in this case you must not use it to decide whether you believe the defendant is guilty of any of the crimes she [sic] has been charged with.

Defense counsel expressed satisfaction with this jury instruction. Accordingly, both cross-examination and a limiting instruction were employed at trial to cure any prejudice arising from Detective Carr's testimony about defendant's criminal history.

These remedies were sufficient to cure the prejudicial effect of the detective's testimony. To begin with, as noted by the trial court, by the time of Detective Carr's testimony regarding defendant's criminal history the jury already had heard, by virtue of the victim's testimony, that defendant had a criminal history. As noted, defendant did not object to that testimony. In addition, the jury was instructed to ignore all evidence related to defendant's criminal history. The jury is presumed to have followed the trial court's instruction, and the instruction was sufficient to cure any prejudice caused by Detective Carr's testimony. See *Waclawski*, 286 Mich App at 710. The curative instruction effectively struck the challenged testimony because the trial court directed the jury to disregard any evidence that defendant had a criminal history. Furthermore, neither the victim's nor Detective Carr's testimony provided any specifics about defendant's criminal history, other than to state that defendant had not been convicted previously of any of the same offenses for which he was on trial—domestic violence, violence against women, or firearms offenses. That instruction directly addressed any issue with the most damaging form of propensity evidence, that a defendant must be guilty because he had committed the same crime before. Given the various

steps taken to mitigate any prejudice, including that defense counsel was permitted to choose a method of mitigation over one suggested by the trial court, it certainly was not the case that "the error complained of is so egregious that the prejudicial effect can be removed in no other way," than the granting of a mistrial. *Dickinson*, 321 Mich App at 18 (quotation marks and citation omitted); *Caddell*, ___Mich App at ___; slip op at 4. Thus, we cannot conclude that the trial court abused its discretion by denying defendant's motion for a mistrial. *See Schaw*, 288 Mich App at 236.

## III. SENTENCING

Defendant argues that he is entitled to resentencing because the trial court erroneously relied on acquitted conduct during sentencing. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

"To preserve a sentencing issue for appeal, a defendant must raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018) (quotation marks and citation omitted). Defendant did none of these. Thus, the issue is unpreserved.

Unpreserved issues are reviewed for plain error. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, citations, and brackets omitted).]

"A 'clear or obvious' error under the second prong is one that is not 'subject to reasonable dispute.' " *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018).

In *People v Beck*, 504 Mich 605, 629-630; 939 NW2d 213 (2019), our Supreme Court held that trial courts cannot make factual findings at sentencing based on "acquitted conduct."[4]  Trial courts, however, retain discretion to consider uncharged conduct at sentencing.  *Id*. at 626-627.  " 'Acquitted conduct' means any 'conduct . . . underlying charges of which [the defendant] had been acquitted.' " *People v Roberts*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 339424) (2020); slip op at 4, reversed in part on other grounds by *People v Roberts*, ___ Mich ___; 949 NW2d 455 (Docket No. 161263) (2020), quoting *United States v Watts*, 519 US 148, 149; 117 S Ct 633; 136 L Ed 2d 554 (1997) (alterations in original).  See also *People v Stokes*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 348471 and 348472); slip op at 4 (quoting *Roberts*). Consequently, "a sentencing court must consider a defendant as having undertaken no act or omission that a jury could have relied upon in finding the essential elements of any acquitted offense proved beyond a reasonable doubt." *Roberts*, ___ Mich App at ___; slip op at 5.  But "*Beck* expressly permits trial courts to consider uncharged conduct and any other circumstances or context surrounding the defendant or the sentencing offense." *Id*.  Furthermore, *Beck* does not "preclude all consideration of the entire *res gestae* of an acquitted offense." *Id*. at ___; slip op at 6.  For example, under *Beck*, a trial court can find at sentencing that a defendant acted with reckless disregard for the safety of others even if a defendant was acquitted of a crime for similar activity requiring a specific intent *mens rea*. *Id*. at ___; slip op at 7.  Such factual findings at sentencing are permissible because they are not findings of acquitted conduct; rather, such a finding is essentially a finding of uncharged conduct.  See *id*. (holding that even though a defendant was acquitted of aiding and abetting a shooting outside a nightclub the trial court could still find that the defendant acted with reckless disregard by bringing a concealed weapon to the nightclub). Additionally, "a sentencing court may review a [presentence investigation report] containing information on acquitted conduct without violating *Beck* so long as the court does not rely on the acquitted conduct when sentencing the defendant," but if "the sentencing court specifically reference[s] acquitted offenses as part of its sentencing rationale, a *Beck* violation [is] apparent." *Stokes*, ___ Mich App at ___; slip op at 4.  Finally, "[i]n the absence of evidence presented by the defendant demonstrating that a sentencing court actually relied on acquitted conduct when sentencing a defendant, the defendant is not entitled to resentencing." *Id*. at ___; slip op at 5.

Defendant argues that the trial court erroneously relied on acquitted conduct at sentencing because the trial court referenced defendant's alleged use of a gun and stated that the use of a gun was the basis for defendant's CSC-I conviction.  According to defendant, the trial court's reference to the use of a gun constituted improper reliance on acquitted conduct because the jury acquitted defendant of each firearm-related charge.  Defendant's argument is unpersuasive.

---

[4] *Beck* was decided after sentencing in this case.  Nevertheless, *Beck* applies to this case because "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." *People v McPherson*, 263 Mich App 124, 135 n 10; 687 NW2d 370 (2004) (citation and quotation marks omitted).

At sentencing, the trial court acknowledged that the jury did not find defendant guilty of each count. The trial court noted, however, that defendant was convicted of a violent offense, stating:

> Now, [defense counsel], you've described that this isn't a violent offense. A person doesn't have to be kicked, stabbed, shot or something to be violent. The fact that a gun is used in this court's mind makes it a violent offense. And ultimately it was the basis for the charge of [CSC-I]. And certainly could [the victim] have run out of the house, I suppose she could have. Does that mean that she was -- didn't feel like she was forced to stay against her will? I don't think that's the case. And I think trying to -- I think indicating that doesn't take into account the real fear that victims of domestic violence have frankly. And while that fear can't always be articulated sometimes it doesn't always make sense. It's a real fear based on past conduct, based on words, based on communications that are between the two parties.
>
> Frankly, unless you were there you don't know what happened, it's all speculation. But [the victim] testified, she testified under oath and the jury accepted her statements as true in finding the defendant guilty of [CSC-I] as well as unlawful imprisonment.

The trial court ultimately determined that sentencing defendant at the high-end of the sentencing guidelines range was appropriate "based on all the facts and circumstances. And, really based on the lifelong effect that this is going to have on [the victim]."[5]

Defendant has not demonstrated that the trial court actually relied on acquitted conduct when imposing his sentence. Unlike in *Beck*, the trial court sentenced defendant within the sentencing guidelines range. See *Beck*, 504 Mich at 610. Defendant does not challenge the trial court's scoring of any specific offense variables (OVs), and none of the OVs scored by the trial court involved the use of a gun. See MCL 777.38 (scoring OV 8); MCL 777.40 (scoring OV 10). This case also differs from *Beck* in that the trial court did not base its sentencing decision on its own conclusion that defendant committed one of the acquitted charges by a preponderance of the evidence. See *Beck*, 504 Mich at 629-630. Rather, the trial court's comment about the gun referred to defense counsel's argument that the trial court should not impose consecutive sentencing because, as stated by defense counsel, "This is not someone who injured [the victim] during the course of this. This was not a violent offense by its very nature." The trial court did not impose a consecutive sentence in this case, but it did apparently believe that a gun was used, which amounted to a finding of fact contrary to acquitted conduct, as defendant was acquitted of multiple

---

[5] The victim wrote a letter to the trial court and the letter was considered by the trial court at sentencing. The letter was not read into the record, but when discussing the victim's letter, the trial court stated: "when I read [the victim's] letter, it is the impact that occurred because of the actions that were committed on that day is an impact that's much greater and much longer than just that evening."

firearms offenses in this case. See *Roberts*, ___ Mich App at ___; slip op at 5. Consequently, the trial court erred by stating that a gun was used in this case.

Nevertheless, the trial judge's statement that a gun was used in this case, without more, does not amount to a *Beck* violation requiring resentencing. For there to be a *Beck* violation, the trial court's reference to the gun would have to have been part of its sentencing rationale. See *Stokes*, ___ Mich App at ___; slip op at 4. The trial court made reference to defendant's use of a gun only in response to defense counsel's argument that defendant did not commit a violent offense. Then the trial court concluded that, even though it would not impose a consecutive sentence, "the high end of the guidelines would be the more appropriate sentence based on all the facts and circumstances" as well as the long-term effects defendant's conduct had on the victim. Based on the record before this Court, defendant failed to demonstrate that the trial court relied on defendant's use of a gun as one of the "facts and circumstances" that informed its sentencing decision; the record bears out only that the trial court relied on the long-term effect defendant's conduct had on the victim. Defendant has the burden of establishing that he was prejudiced by the trial court's error. See *Carines*, 460 Mich at 763-764. Defendant has failed to establish, however, that the trial court would have imposed a different sentence if it had not found that he used a gun during the commission of his offenses.[6] Such a showing is required for defendant to meet the high burden of establishing prejudice under the plain error standard. Thus, although the trial court erred by finding that a gun was used in this case, reversal is not warranted because defendant has not established that this finding prejudiced him. See *id*.

## IV. CONCLUSION

The trial court was within its discretion in denying defendant's motion for mistrial, and although it erred at sentencing, that error was not prejudicial to defendant. For the reasons stated in this opinion, defendant's convictions and sentences are affirmed.

/s/ Jonathan Tukel
/s/ Kathleen Jansen
/s/ Thomas C. Cameron

---

[6] It is important to note that the trial court's characterization of the offense in this case as "violent" is correct even without consideration of whether a gun was used. The victim testified at trial that defendant strangled her and that she continually felt in fear for her own life during the incident. Additionally, when describing the event as violent, the trial court also made reference to the general fear created by domestic violence—a crime for which defendant was also convicted. Consequently, there was ample support for the trial court's conclusion that defendant was being sentenced for a violent offense even without a finding that defendant used a gun. Consequently, defendant cannot show prejudice in the trial court's conduct of his sentencing.