*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JEREMIAH JAMES MOCERI,

        Defendant-Appellant.

UNPUBLISHED
October 15, 2024
2:15 PM

No. 360981
Lapeer Circuit Court
LC No. 2020-013772-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JEREMIAH JAMES MOCERI,

        Defendant-Appellant.

No. 361230
Lapeer Circuit Court
LC No. 2019-013471-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JEREMIAH JAMES MOCERI,

        Defendant-Appellant.

No. 361643
Lapeer Circuit Court
LC No. 2019-013472-FH

Before: CAMERON, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

-1-

In Docket No. 360981, LC No. 2020-013772-FC, defendant was convicted of kidnapping, MCL 750.349; two counts of third-degree criminal sexual conduct (CSC), MCL 750.520d, as lesser included offenses of first-degree CSC, MCL 750.520b; and two counts of fourth-degree CSC, MCL 750.520e, as lesser included offenses of second-degree CSC, MCL 750.520c. In Docket No. 361230, LC No. 2019-013471-FH, the jury convicted defendant of assault with intent to commit criminal sexual penetration, MCL 750.520g(1), and assault by strangulation, MCL 750.84. In Docket No. 361643, LC No. 2019-013472-FH, defendant was convicted of false report of a felony, MCL 750.411a(1)(b).

He was sentenced as a second-offense habitual offender, MCL 769.10, to concurrent terms of 20 to 30 years' imprisonment for kidnapping, 3 years to 22 years and 6 months' imprisonment for each of the third-degree CSC convictions; one year and one day to three years' imprisonment for each of the fourth-degree CSC convictions; 5 to 15 years' imprisonment for assault with intent of criminal penetration; 5 to 15 years' imprisonment for assault by strangulation; and two years and four months to six years' imprisonment for false report. Defendant appeals as of right his convictions and sentences in these consolidated appeals.[1] We affirm.

I. SUBSTANTIVE FACTS

Defendant's convictions arise from an ordeal he imposed on the victim the night of January 27, 2019. Defendant and the victim share two sons, who were 11 and 5 years old in January 2019. Defendant and the victim were no longer romantically involved, but they lived together and slept in separate bedrooms in the victim's house. Defendant suspected that the victim was sexually abusing their older son, but was waiting to acquire firm evidence before he reported the alleged abuse to the police.

The incident at issue began when defendant went to the victim's bedroom after she had gone to bed. Defendant and the victim gave conflicting trial testimony regarding what happened. The victim testified that defendant came to her room and physically restrained her by holding her in a "bear hug." She tried to defend herself by scratching his face, drawing blood. He accused her of sexually abusing the older son. He then strangled her by pressing his hand and forearm against her neck. The victim began to hyperventilate. Defendant brought her a bag to breathe into and then pushed her downstairs to the kitchen, where he held her head outside the sliding door until she caught her breath. Defendant then pushed her to the basement living room and onto a couch. According to the victim, defendant told her to undress, with which she complied out of fear. Defendant put his mouth on each of her breasts. He tried to penetrate her vagina with his penis, but was unable to get an erection. He penetrated her vagina with his tongue and fingers. The victim cried and pleaded with him to stop. She did not believe she could leave the house because she did not want to leave her children alone in the house with defendant. After 30 to 40 minutes, defendant finally stopped and allowed her to return to her bedroom. He came into the bedroom and laid beside her in the bed.

---

[1] *People v Moceri*, unpublished order of the Court of Appeals, entered September 21, 2022 (Docket Nos. 360981, 361230, and 361643).

On the other hand, defendant testified that he went to the victim's bedroom to ask whether she needed help to stop abusing the older son. The victim refused to discuss the abuse with defendant and tried to distract him by initiating sexual activity, which he resisted. The victim voluntarily came to the kitchen when he was getting a bag to treat her hyperventilation. He testified that she pulled his head between her breasts.

The next morning, the victim planned her day so that she could take herself and the children out of the house. The plan was partly disrupted by defendant's decision to take the older son with him to his snow-plowing job, but the victim was able to pick the older son up in the afternoon. The victim went to a hospital to report the sexual assault and have a forensic examination to preserve evidence. She gave a statement to a sheriff's deputy. The following day she underwent a complete forensic exam with a sexual assault nurse examiner (SANE). The victim was afraid to return home, so she arranged to stay with friends and family.

A few days later, the victim and some family members returned to the house to install a security system and to change the locks. They called emergency services after discovering defendant hiding under the older son's bed and defendant was arrested. During an interview with Lieutenant Gary Parks of the Lapeer County Sheriff's Department, defendant explained that the victim falsely accused him of sexual assault because he warned her that he was going to report her for abusing the older son.[2]

## II. PROCEDURAL FACTS

The prosecutor charged defendant with two counts of third-degree CSC, two counts of fourth-degree CSC, assault with intent to commit criminal sexual penetration, and assault with intent to commit great bodily harm or by strangulation or suffocation in LC No. 19-013471-FH. Defendant was also charged with false report of a felony in LC No. 19-013472-FH. Subsequently, in LC No. 20-013772-FC, the prosecutor charged defendant with two counts each of first-degree CSC under MCL 750.520b(1)(c), sexual penetration under circumstances involving commission of another felony, and second-degree CSC, MCL 750.520c(1)(c), sexual contact under circumstances involving commission of another felony. The predicate felonies for these charges were kidnapping and unlawful imprisonment, MCL 750.349b. The prosecutor moved to consolidate the three informations. The trial court granted consolidation as to LC No. 19-013471-FH and LC No. 20-013772-FH, but decided that LC No. 19-013472-FC would remain separate. Before trial, the parties stipulated that all three cases would be consolidated.

At trial, the parties stipulated that the two fourth-degree CSC charges would not be presented as separate charges, but as alternative, lesser offenses of the second-degree CSC charges. The trial court instructed the jury accordingly. The trial court also instructed the jury that it could

---

[2] Children's Protective Services (CPS) and the Child Advocacy Center conducted forensic interviews of the older son, but he did not disclose any sexual abuse. The victim was never charged with sexually assaulting the older son, and CPS never substantiated allegations of abuse or neglect. The children remained in the victim's custody.

convict defendant of the lesser offenses of third-degree CSC if it did not find him guilty of first-degree CSC. The trial court dismissed the unlawful imprisonment charge.

Several witnesses testified at trial, including the registered nurse who performed the victim's SANE examination and Lieutenant Gary Parks of the Lapeer County Sheriff's Department. Lieutenant Parks testified that he obtained buccal swabs from defendant while he was incarcerated in the Lapeer County Jail. Defendant was convicted and sentenced as noted. This appeal followed.

## III. CONSOLIDATION OF TRIALS

Defendant argues that the trial court erroneously consolidated the false report trial with the consolidated trials for CSC, kidnapping, and assault. Although defendant initially opposed consolidation of the three cases, his counsel subsequently stipulated to an order of consolidation. "Waiver has been defined as the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). A waiver "differs from forfeiture, which has been explained as the failure to make the timely assertion of a right." *Id.* (quotation marks and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id.* (quotation marks and citation omitted). By intentionally stipulating to consolidation, defendant not only failed to preserve this issue, but also waived it. We therefore will not consider this issue on appeal.

## IV. INCONSISTENT VERDICTS

Defendant argues that his conviction of kidnapping must be reversed because it is inconsistent with the jury's verdicts convicting him of the lesser third-degree CSC and fourth-degree CSC charges. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

"To properly preserve most issues for appeal, a party must object in the trial court." *People v Montague*, 338 Mich App 29, 50; 979 NW2d 406 (2021). Defendant did not raise the issue of inconsistent verdicts in the proceedings below. Therefore, this issue is unpreserved for our review. *Id.*

The question of whether a jury impermissibly rendered inconsistent verdicts is a constitutional issue which we usually review de novo. *People v Russell*, 297 Mich App 707, 722; 825 NW2d 623 (2012). But, because this issue is unpreserved, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* " 'Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425; 884 NW2d 297 (2015) (citation omitted).

## B. LAW AND ANALYSIS

"Under Michigan law, each count of an indictment is regarded as if it were a separate indictment and consistency in jury verdicts is not necessary." *Russell*, 297 Mich App at 722. "Verdicts are considered inconsistent when the verdicts cannot rationally be reconciled." *Montague*, 338 Mich App at 51 (quotation marks and citation omitted). "Inconsistent verdicts within a single jury trial are permissible, and do not require reversal absent a showing of confusion by the jury, a misunderstanding of the instructions, or impermissible compromises." *Id*. "The burden is on the defendant to prove evidence of one of these three things." *Id*. "The defendant may not merely rely on the alleged inconsistency itself to support such an argument." *Id*.

Defendant asserts on appeal that his kidnapping conviction must be vacated because it is the result of an impermissible inconsistent verdict. This argument relies on the fact that the jury acquitted him of several counts of CSC that were alleged to have occurred during the commission of a kidnapping, yet the jury convicted him of the lessor included CSC charges arising out of the same conduct and convicted him of the kidnapping itself. This, defendant suggests, reveals possible jury confusion because had the jury believed that defendant was guilty of the criminal sexual conduct and kidnapping offense, then it would not have acquitted him of more serious CSC offenses.

Even if we accept defendant's argument that his convictions were inconsistent, he has failed to meet his burden of proof that there was juror confusion or compromise. Defendant argues that Michigan permits inconsistent jury verdicts only because juries "possess inherent power of leniency," which does not apply here because the jury was not lenient with respect to the kidnapping conviction. Defendant cites no authority providing that indication of leniency is a necessary condition of allowing an inconsistent verdict. Indeed, his argument is contrary to this Court's holding that statement that inconsistent verdicts "do not require reversal absent a showing of confusion by the jury, a misunderstanding of the instructions, or impermissible compromises." *Montague*, 338 Mich App at 50. Furthermore, juries' exemption from rules of logic permit them to show leniency inconsistently. Defendant thus fails to establish plain error affecting his substantial rights.

## V. HEARSAY

Defendant argues that the trial court erred in permitting the SANE to read the victim's statement as recorded in the SANE's record. He argues that the statement was not admissible under the hearsay exception for statements made for purposes of medical treatment under MRE 803(4).[3] We disagree.

---

[3] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). This opinion cites and quotes the version of the Rules of Evidence in effect at the time of trial.

## A. PRESERVATION AND STANDARD OF REVIEW

A party preserves a challenge to the trial court's admission of evidence by raising a timely objection and stating the specific ground for objection, unless it is apparent from context. MRE 103(a)(1). Defendant objected to the witness reading from her report on the ground that she did not have "an independent recollection in that she is required to refer to her report before giving testimony." The trial court ruled against defendant. Neither the prosecutor nor the trial court cited MRE 803(4) as a basis for admitting or excluding the statement. Accordingly, this issue is not preserved for appeal.[4]

A trial court's decision to admit evidence is reviewed for an abuse of discretion. *People v Edwards*, 328 Mich App 29, 34; 935 NW2d 419 (2019). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *People v Baskerville*, 333 Mich App 276, 287; 963 NW2d 620 (2020). But, preliminary questions of law, including whether evidence is inadmissible under the Rules of Evidence, are reviewed de novo. *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). Unpreserved issues are reviewed for plain error affecting the party's substantial rights. *Carines*, 460 Mich at 763.

## B. LAW AND ANALYSIS

The SANE testified that the procedure for performing the examination included recording the patient's statements for purposes of medical treatment. Over defendant's objection, the prosecutor moved to admit the report under MRE 803(6), the hearsay exception for records of a regularly conducted activity. The trial court granted the motion.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. MRE 801(c). Generally, hearsay is not admissible unless the Rules of Evidence provide otherwise. MRE 802. MRE 803(6) provides an exception for records of a regularly conducted activity, which is defined as:

> A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term

---

[4] Plaintiff argues that defendant waived this issue by stipulating to admission of the SANE's record of the forensic exam. "Waiver has been defined as the intentional relinquishment or abandonment of a known right." *Carter*, 462 Mich at 215. We do not agree with plaintiff's assertion that stipulation to admission of the record extends to admission of a witness's testimony reading the record, especially when the portion of the record is purportedly a verbatim recording of another person's statement.

"business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The trial court's statement that the SANE signed the documents implicitly referenced that the record was made "by a person with knowledge." *Id.* Defendant did not raise any contrary arguments in the trial court, nor does he make any on appeal. Accordingly, he fails to establish error in the admission of the SANE's testimony because he fails to challenge the trial court's stated reason for admitting the testimony.

## VI. NONRESPONSIVE TESTIMONY

Defendant next argues that he was denied a fair trial because Lieutenant Parks made a gratuitous statement that defendant was jailed when he provided a buccal swab for DNA testing. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

"To preserve a claim that there was an irregularity warranting a mistrial, the defendant must move for a mistrial in the trial court and assert the same ground for relief before the trial court that he asserts on appeal." *People v Haynes*, 338 Mich App 392, 410; 980 NW2d 66 (2021). Defendant failed to object to Lieutenant Parks's reference to defendant's detention in the jail or to request a mistrial or any other remedy. This issue therefore is not preserved. *Id.*

A trial court's decision on a motion for mistrial is reviewed for abuse of discretion. *People v Boshell*, 337 Mich App 322, 335; 975 NW2d 72 (2021). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Baskerville*, 333 Mich App at 287. Unpreserved issues are reviewed for plain error affecting the party's substantial rights. *Carines*, 460 Mich at 763.

## B. LAW AND ANALYSIS

On direct examination, the prosecutor asked Lieutenant Parks if he obtained a buccal swab from anyone to compare with the sample from the victim's rape kit. Lieutenant Parks replied that he obtained a search warrant and went to the jail to obtain defendant's buccal swab. When asked what it meant "to execute a search warrant in this case," he replied: "It was right in the Lapeer County Jail . . . . [Defendant] was an inmate there at the time."

Defendant relies on *People v Holly*, 129 Mich App 405; 341 NW2d 823 (1983), in which a police officer stated during cross-examination that the defendant implicated himself in prior robberies, in addition to the robbery with which he was charged. *Id.* at 414-415. The defendant moved for a mistrial, which was denied. *Id.* at 415. The defendant did not request a curative instruction. *Id.* This Court held that "when an unresponsive remark is made by a police officer, this Court will scrutinize that statement to make sure the officer has not ventured into forbidden areas which may prejudice the defense." *Id.* This Court found that the witness, as a police sergeant and the officer in charge of the case, "should have known better than to volunteer such information[,]" because "evidence tying a defendant to other crimes is highly prejudicial." *Id.*

at 416. The evidence was especially prejudicial in *Holly*, because the defendant's theory was that he did not participate in the robbery, but merely cooperated because he was afraid of his coperpetrator. *Id*. This Court noted that the plausibility of this theory was "substantially reduced" if the jury knew that he participated in previous robberies. *Id*. Regardless, this Court affirmed the defendant's conviction because the properly admitted evidence "was simply too strong." *Id*.

As a general rule, a prosecution witness's nonresponsive testimony does not warrant a mistrial unless the prosecutor knew that the witness would give the nonresponsive testimony, or the prosecutor encouraged or conspired with the witness to make the statement. *Jackson*, 313 Mich App at 427. In *People v Waclawski*, 286 Mich App 634; 780 NW2d 321 (2009), in a trial on charges unrelated to illegal substances, a police officer improperly testified that "a small baggy of suspected marijuana" was found in the defendant's home.[5] *Id*. at 709. This Court held that the improper testimony was merely an "isolated comment that was not repeated or explored further." *Id*. The defendant preserved the issue by moving for a mistrial, but the trial court "denied the motion, instead finding that a curative instruction at the end of trial would be sufficient to cure any error." *Id*. The trial court instructed the jury not to consider the evidence "in any way in arriving at [its] verdict." *Id*. This Court concluded that the statement "did not constitute error that impaired defendant's ability to get a fair trial[,]" because the statement was "an isolated comment that was not repeated or explored further[,]" and "the trial court provided a comprehensive curative instruction to the jury." *Id*. at 709-710.

In *People v Griffin*, 235 Mich App 27; 597 NW2d 176 (1999), overruled in part on other grounds by *People v Thompson*, 477 Mich 146; 730 NW2d 708 (2007), an informant was instructed not to say anything regarding the defendant's prior incarceration, but he testified that he received a phone call from the defendant, in which the defendant said that he was in jail and would not be returning to prison. *Griffin*, 235 Mich App at 35-36. The trial court denied the defendant's motion for a mistrial. *Id*. at 36. On appeal, this Court concluded that, "[b]ecause the mention of prior incarceration of which defendant complains was not elicited by the prosecutor but was instead volunteered in response to a proper question, that brief incidental mention did not warrant a mistrial." *Id*. at 37. The trial court's failure to provide a curative instruction was also not error requiring reversal because the defendant did not request one. *Id*.

In the instant case, Lieutenant Parks's reference to the jail did not insinuate that defendant had been incarcerated before the events of this case or for charges unrelated to the events of January and February 2019. Jurors had no reason to believe that defendant was an inmate for any reason other than that he was arrested for the instant charges. The references were brief, and the

---

[5] Strictly speaking, the officer's testimony was not "unresponsive" to the prosecutor's broad question, "was there anything else of evidentiary value that you found in the house?" *Waclawski*, 286 Mich App at 708-709. It was irrelevant to the charges of CSC and production of child sexually abusive material. MCL 750.145c, MCL 750.797(3). *Id*. at 641. The trial court admonished the prosecutor for his failure to properly prepare the witness to avoid mentioning the marijuana. *Id*. at 709.

prosecutor did not refer to them in closing argument. Under these circumstances, defendant fails to establish plain error affecting his substantial rights or entitlement to a new trial.

## VII. CORRECTION OF JUDGMENT OF SENTENCE

Defendant claims that his judgment of sentence erroneously states that he was convicted of fourth-degree CSC under MCL 750.520e(1)(a), victim at least 13 years of age, but less than 16 years of age, and that he was convicted under MCL 750.521e(1)(b), force or coercion used to accomplish the sexual contact. Defendant's argument arises from a misunderstanding of the judgment of sentence. The judgment of sentence form offers the sentencing court the choice of listing the MCL citation or Prosecuting Attorneys Coordinating Council (PACC) code under "Charge Code(s)." The trial court may use either in the judgment of sentence as long as there is no confusion regarding which is used. *People v Kuchiak*, 467 Mich 873 (2002). The trial court properly used the PACC code in citing defendant's conviction.

## VIII. DEFENDANT'S STANDARD 4 BRIEF

### A. ADDITION OF COUNTS

Defendant argues that the trial court improperly "added" counts of third-degree CSC and fourth-degree CSC, contrary to the prosecutor's consolidated general information. The factual premise of this argument is erroneous. The trial court instructed the jury on third-degree CSC as an alternative lesser offense to first-degree CSC, and on fourth-degree CSC as an alternative lesser offense to second-degree CSC. Thus, there is no error warranting our reversal.

### B. JURY INSTRUCTIONS ON LESSER OFFENSES

Defendant next argues that the jury instructions were erroneous because they gave the jury the option of convicting him of the lesser CSC offenses. We disagree.

"A party must object or request a given jury instruction to preserve the error for review." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000); see also MCR 2.512(C); MCL 768.29. Defendant failed to preserve this issue by timely objecting to the inclusion of fourth-degree CSC and third-degree CSC as alternative lesser offenses in the jury instructions. *Id*. Furthermore, defense counsel responded "no" when the trial court asked whether either counsel had "any comment" on the jury instructions and verdict form. "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). An affirmative statement by counsel that there are no objections to the proposed jury instructions constitutes express approval of the jury instructions. *Id*. at 504-505. Defendant has therefore waived this issue.

Even so, defendant's argument also lacks substantive merit. The lesser CSC offenses in this case were *charged* offenses. Because these offenses were charged under the felony information, the trial court was obliged to instruct the jury accordingly. See *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018) (a trial court must instruct the jury on all the charged offenses).

## C. SUFFICIENCY OF THE EVIDENCE

Defendant argues the trial court erred in denying his motion for directed verdict because there was insufficient for kidnapping under MCL 750.349(1)(c). We disagree.

We review a defendant's sufficiency-of-the-evidence challenge "by examining the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Clark*, 330 Mich App 392, 436; 948 NW2d 604 (2019) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of [a] crime, and it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences[.]" *People v Walker*, 330 Mich App 378, 382; 948 NW2d 122 (2019) (quotation marks and citations omitted, first alteration in *Walker*). In reviewing the issue of whether a trial court correctly decided a motion for a directed verdict, this Court "reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in a light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).

A reasonable trier of fact could find from the victim's testimony that defendant forced her to go to the lower levels of the house and forced her to submit to sexual contact on the couch. Viewed in a light most favorable to the prosecution, this testimony proved the elements required by MCL 750.349(1)(c). *Clark*, 330 Mich App at 436; *Aldrich*, 246 Mich App at 122. Thus, the trial court did not err in denying the motion for a directed verdict.[6]

## D. OMISSIONS FROM THE RECORD

Defendant argues that the trial court erred in failing to make a record of its decisions for consolidating his trials and for "adding" charges of third-degree and fourth-degree CSC. The factual premises of defendant's arguments in this issue are erroneous. The record establishes that defense counsel stipulated to consolidation. The record also establishes that the trial court did not add additional counts of third-degree and fourth-degree CSC. It merely properly gave instructions on defendant's lesser included offenses.

## E. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises multiple claims of ineffective assistance of counsel, all of which lack merit.

---

[6] Defendant also claims the district court erred in finding probable cause for the kidnapping allegation and binding defendant over to the circuit court. Because there was sufficient evidence presented at trial, we need not consider this issue further. See *People v Bennett*, 290 Mich App 465, 481; 802 NW2d 627 (2010) ("[T]he presentation of sufficient evidence to convict at trial renders any erroneous bindover decision harmless.")

### 1. PRESERVATION AND STANDARD OF REVIEW

Defendant preserved this issue by raising it in a motion for a new trial and requesting a *Ginther*[7] hearing. However, the trial court denied defendant's request for a *Ginther* hearing, and this Court denied his motion to remand for the same. *People v Moceri*, unpublished order of the Court of Appeals, entered April 26, 2024 (Docket Nos. 360981, 361230, and 361643). Generally, when no *Ginther* hearing is held, this Court's review is limited to mistakes apparent on the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

### 2. LAW AND ANALYSIS

"A claim of ineffective assistance of counsel is a mixed question of law and fact." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id.* To establish ineffective assistance of counsel, a defendant first must demonstrate that trial counsel's performance fell below an objective standard of reasonableness. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *Id.* at 290. "Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *Id.*

Defendant raises two claims of ineffective assistance related to the trial court's consolidation of his charges. First, defendant argues that trial counsel failed to independently investigate the charging documents. Second, defendant argues that trial counsel failed to make a record documenting the reason for the consolidation. The trial court record shows only that defense counsel stipulated to the consolidation. Defendant has not provided any evidence regarding communications between himself and his trial counsel. Defendant attached his affidavit to his Standard 4 brief, but not to his motion for remand. It is therefore not part of the lower court record. Moreover, the affidavit asserts his innocence but states nothing related to the consolidation. Therefore, the record does not support any inference other than that trial counsel agreed to the consolidation for strategic reasons. *Armstrong*, 490 Mich at 290.

The record also does not indicate that there was any charging irregularity that defense counsel should have investigated. The primary defense theory was that the victim fabricated the CSC allegations against defendant because he was preparing to report her for sexually abusing their older son. Defendant's testimony included his complaint that law enforcement officers did not take his allegations seriously because the victim successfully convinced them that defendant assaulted her. Consolidating trials gave defendant the opportunity to convince the jury that he was both innocent of the victim's allegations as well as that he was the victim of the her machinations. Separate trials would not have given defendant an advantage, because the alleged false report was closely intertwined with the alleged assaults. Accordingly, defendant fails to demonstrate ineffective assistance with respect to the consolidation.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant raises three claims of error related to the "addition" of two charges of third-degree CSC and two charges of fourth-degree CSC. As we have already concluded, no charges were "added" at trial. The trial court properly instructed the jury on third-degree CSC as a lesser included offense of first-degree CSC, and on fourth-degree CSC as a lesser included offense of second-degree CSC. In hindsight, defendant might have been acquitted outright of the first-degree and second-degree charges if the jury did not have the alternative lesser included offenses, but the effectiveness of trial counsel's performance is not assessed with the benefit of hindsight. *Petri*, 279 Mich App at 411.

## F. SENTENCING GUIDELINES SCORES

Defendant finally argues that the trial court erred in assessing Offense Variables (OV) 7, 10, 13, and 19. We disagree.

### 1. PRESERVATION AND STANDARD OF REVIEW

"To preserve a challenge to the scoring of the sentencing guidelines, the challenge must be raised at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in this Court." *People v Ventour*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363922); slip op at 9; MCR 6.429(C). Defendant objected to the trial court's assessment of OVs 7, 10, and 19 in his sentencing memorandum, and objected to the assessment of OV 13 at sentencing. However, the arguments he raised in the trial court regarding OV 7 and OV 10 are not the same as the arguments he raises on appeal. Defendant's claims of error are therefore preserved for OVs 13 and 19, but not for OVs 7 and 10. Defendant acknowledges that he did not preserve his objection to OV 11.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* Unpreserved scoring issues are reviewed for plain error affecting the defendant's substantial rights. *Ventour*, ___ Mich App at ___; slip op at 9.

### 2. UNDERLYING LAW

"Michigan's sentencing guidelines are now advisory only, but trial courts must still consult the guidelines and take them into account during sentencing." *People v Teike*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363705); slip op at 8. "Appellate courts are no longer required to affirm within-guidelines sentences absent an error in the sentencing guidelines scoring or inaccurate information relied upon by the trial court in sentencing." *Id.* at ___; slip op at 8. "However, sentences that fall within the properly-calculated sentencing guidelines minimum range are rebuttably presumed to be proportionate." *Id.* at ___; slip op at 8. A defendant is entitled to resentencing if there is a scoring error that alters the defendant's recommended minimum sentence range under the guidelines. *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A sentence is not valid if it is based on inaccurate information. *Id.* A scoring error that does not affect the guidelines range is harmless, and does not require resentencing. *Id.* at 91-92.

Under the sentencing guidelines, kidnapping is a Class A offense. MCL 777.16q. MCL 777.62 provides the minimum sentence range grid for Class A offenses. Defendant's total OV score of 160 points (135 points scored by probation department, raised 25 points by the trial court's reassessment of OV 13), combined with his total PRV score of 35, placed him at the VI-D cell on the Class A Felony grid, which provides a minimum sentence range of 171 to 285 months. Defendant was sentenced as a second-offense habitual offender, MCL 769.10. Accordingly, the upper limit of this range was increased by 25% to 356 months. MCL 777.21(3)(a). The maximum total OV score permitted for Level VI is 100 points. Therefore, defendant must demonstrate that his total OV score, correctly calculated, is 99 points or less.

### 3. OV 7

OV 7 addresses "aggravated physical abuse." MCL 777.37(1). This variable is assessed 50 points if "[a] victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). "Sadism" is defined as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." MCL 777.37(3). Defendant argues that his "intent to engage in criminal sexual penetration or contact . . . ended as soon as the criminal sexual conduct began . . . ." He claims that, once the sexual assault began, his conduct "did not rise above the baseline for the amount of fear and anxiety experienced by a victim of kidnapping." We disagree that the kidnapping ended when the sexual assaults began. MCL 750.349(1)(c) provides that "[a] person commits the crime of kidnapping if he or she knowingly restrains another person with the intent to . . . [e]ngage in criminal sexual penetration or criminal sexual contact . . . ." Defendant's intent to commit the sexual assaults did not evaporate when he began to perpetrate them. He intended to sexually assault the victim for as long as the assaults lasted. By subjecting her to a prolonged period of being touched, manipulated, and under his physical control, defendant subjected the victim to prolonged fear and humiliation. The trial court's assessment of OV 7 was therefore supported by the evidence.

### 4. OV 10

Defendant argues that the trial court erred in finding that he exploited the victim's vulnerability for purposes of assessing OV 10, "exploitation of a vulnerable victim." MCL 777.50(1). OV 10 is assessed 10 points when "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). "Exploit" is defined as "to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). "Vulnerability" is defined as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). Our Supreme Court, in *People v Cannon*, 481 Mich 152, 158-159; 749 NW2d 257 (2008), provided factors to consider when determining whether a victim was vulnerable:

> (1) the victim's physical disability, (2) the victim's mental disability, (3) the victim's youth or agedness, (4) the existence of a domestic relationship, (5) whether the offender abused his or her authority status, (6) whether the offender exploited a victim by his or her difference in size or strength or both, (7) whether the victim

was intoxicated or under the influence of drugs, or (8) whether the victim was asleep or unconscious.

"The mere existence of one of these factors does not automatically render the victim vulnerable." *Id*. at 159. MCL 777.40 contemplates "vulnerabilities that may arise not only out of a victim's characteristics, but also out of a victim's relationships or circumstances." *People v Huston*, 489 Mich 451, 464; 802 NW2d 261 (2011). It does not "limit 'vulnerability' of a victim to inherent or personal characteristics of the victim[.]" *Id*. "Rather, the statutory language allows for susceptibility arising from external circumstances as well." *Id*. at 466. In *Huston*, our Supreme Court concluded the victim was vulnerable because she "was alone in the dark, and defendant and his cohort outnumbered her." *Id*. The defendant made her more susceptible to injury, and therefore more vulnerable, because "[he] and his cohort were lying in wait for her, armed and hidden from her view." *Id*.

MCL 777.40 does not define the term "domestic relationship." Defendant argues that, although he and the victim were in a domestic relationship, the phrase "domestic relationship" is unconstitutionally vague. "[A] statute may be considered unconstitutionally vague if it 'fail[s] to provide fair notice of the conduct proscribed' or 'encourage[s] arbitrary and discriminatory enforcement.' " *People v Burkman*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket Nos. 164638 and 164639); slip op at 29 (citation omitted, all but first alterations in *Burkman*). "A statute provides fair notice when it give[s] a person of ordinary intelligence a reasonable opportunity to know what is prohibited,' and such knowledge may be acquired 'by referring to judicial interpretations, common law, dictionaries, treatises, or the common meaning of words.' " *Id*., quoting *People v Miller*, 326 Mich App 719, 738; 929 NW2d 821 (2019) (alteration in *Burkman*).

In *People v Jamison*, 292 Mich App 440; 807 NW2d 427 (2011), the defendant challenged the trial court's assessment of 10 points for OV 10. *Id*. at 442. The defendant argued that she and the victim did not have a domestic relationship at the time she committed the sentencing offense of assault with intent to cause great bodily harm. *Id*. at 442-444. The defendant and the victim had a dating relationship in the past, but the victim ended the relationship more than a year before the assault. *Id*. at 441-442. This Court considered two divergent constructions of the term "domestic relationship" in OV 10. One approach relied on the domestic assault statute for guidance. "Under the domestic assault statute, a person is guilty of domestic assault if the person assaults 'his or her spouse or former spouse, *an individual with whom he or she has or has had a dating relationship*, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household.' " *Id*. at 445, quoting 750.81(2).

This Court reasoned that, in contrast to this approach:

[S]everal other panels of this Court have used the lay dictionary definition of "domestic" and concluded that there must be a "familial" or "cohabiting" relationship to qualify as a domestic relationship. As explained in these decisions, if a statute does not provide a definition for a particular term, courts must "give the term its plain and ordinary meaning." "When determining the common, ordinary meaning of a word or phrase, consulting a dictionary is appropriate." *Random House Webster's College Dictionary* (1997) defines "domestic" as "1. of or pertaining to the home, family, or household affairs. 2. devoted to home life."

-14-

Under these definitions, a familial or cohabitating relationship characterizes a domestic relationship. [*Jamison*, 292 Mich App at 446-447 (footnote citations omitted).]

The *Jamison* Court concluded this approach was preferable to the domestic assault statute approach, because the statutory approach "implies a potentially overbroad application based on words that are not in the statute." *Id*. at 448. Accordingly, the defendant and the victim lacked the requisite domestic relationship to support assessing 10 points for OV 10, because they no longer had a cohabiting relationship and no longer shared a domicile. *Id*. Although *Jamison* did not directly address the question of whether the term "domestic relationship" was impermissibly vague, its selection of one of two suggested interpretations establishes that the OV 10 statute informs a person of ordinary intelligence of the circumstances, namely, a cohabiting or familial relationship, that result in a 10-point assessment. *Burkman*, ___ Mich at ___; slip op at 29. Defendant's argument that the term "domestic relationship" is unconstitutionally vague is therefore without merit.

Defendant and the victim undoubtedly had both a cohabiting and familial relationship. They had two children together and lived in the same residence to facilitate caring for them. The cessation of the romantic and sexual aspects of their relationship did not negate the cohabiting and familial aspects. The trial court thus did not err in finding that defendant exploited the vulnerability the victim had from their living arrangement. Defendant's presence in the home gave him access to the victim, including access when she was in her separate bedroom at night. The presence of the children limited the victim's options in reacting to defendant's assault. She reasonably feared that defendant would harm the children if she left them alone with him. Although the victim was not hindered by physical or mental limitations, the circumstances made her vulnerable, and defendant exploited those circumstances to kidnap and assault her.

5. OV 11

Defendant argues that his trial counsel rendered ineffective assistance because he failed to object to the assessment of OV 11, which concerns the number of sexual penetrations. OV 11 is assessed 50 points for two or more penetrations, 25 points for one penetration, and 0 points for no penetration. MCL 777.41(1). The statute further provides:

All of the following apply to scoring offense variable 11:

(a) Score all sexual penetrations of the victim by the offender arising out of the sentencing offense.

(b) Multiple sexual penetrations of the victim by the offender extending beyond the sentencing offense may be scored in offense variables 12 or 13.

(c) Do not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense. [MCL 777.41(2).]

Defendant argues that there were two allegations of sexual penetration, one of which supported an element of the sentencing offense of kidnapping, and therefore could not be counted under MCL 777.41(2)(c).

Defendant's interpretation of the statute is erroneous. MCL 777.41(2)(a) requires the court to consider penetrations "arising out of the sentencing offense." The sentencing offense is kidnapping. MCL 777.41(2)(c) instructs the trial court not to count the penetration "that forms the basis of a first- or third-degree criminal sexual conduct offense." Kidnapping is not first- or third-degree CSC. The exclusion in MCL 777.41(2)(c) applies only to first-degree and third-degree CSC. Therefore, the trial court was not prohibited from counting the act of CSC that supported the kidnapping charge. Additionally, the offense of kidnapping, as charged in this case, did not require an act of penetration. It required only the *intent* to engage in criminal sexual penetration or criminal sexual contact. MCL 750.349(1)(c). Even assuming that the exclusion in MCL 777.41(2)(c) applied to kidnapping under MCL 750.349(1)(c), the trial court could still count both acts of penetration arising out of the kidnapping, because the kidnapping conviction would still be supported by the convictions of fourth-degree CSC or assault with intent to commit penetration.

Defendant's argument regarding the assessment of OV 11 is therefore without merit. Defense counsel did not have a valid reason to assert the objection. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). This omission therefore was not an objectively unreasonable error and would not have led to a more favorable outcome. *Armstrong*, 490 Mich at 289-290.

6. OV 13

OV 13, "continuing pattern of criminal behavior[,]" MCL 777.43(1), was originally assessed at 0 points. The trial court reassessed OV 13 at 25 points, which is appropriate when the offense "was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). "For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). In *People v Gibbs*, 299 Mich App 473; 830 NW2d 821 (2013), the defendants were convicted of, among other counts, various counts of armed robbery, MCL 750.529, unarmed robbery, MCL 750.530, and conspiracy to commit armed robbery, MCL 750.157a and 750.529. *Gibbs*, 299 Mich App at 477. The defendants argued that the trial court erred in assessing 25 points for OV 13 because all of their convictions arose out of a single incident. *Id*. at 487, 493. This Court affirmed the assessment, holding that "there is nothing in the language of MCL 777.43(1)(c) to support Gibbs's argument that multiple convictions arising from the same incident cannot be considered for scoring OV 13." *Gibbs*, 299 Mich App at 487. The Court reasoned:

> [W]hile the robberies arose out of a single criminal episode, Gibbs committed three separate acts against each of the three victims and these three distinct crimes constituted a pattern of criminal activity. Additionally, although some subsections of MCL 777.43 contain limitations on a trial court's ability to score for more than one instance arising out of the same criminal episode, subsection (1)(c) contains no such limitation. Accordingly, because multiple concurrent offenses arising from

-16-

the same incident are properly used in scoring OV 13, the trial court did not err by assessing 25 points for that variable. [*Gibbs*, 299 Mich App at 488.]

Defendant argues his circumstances are distinguishable from the facts of *Gibbs*. He cites *People v Carll*, 322 Mich App 690; 915 NW2d 387 (2018), in which the defendant drove his pickup truck past a stop sign and struck another vehicle in the intersection. *Id*. at 693-694. The driver of the other car was killed, and the passengers in both defendant's truck and the other vehicle suffered serious injuries. *Id*. at 694. This Court held that "a single felonious act cannot constitute a pattern" under OV 13, *id*. at 704, concluding:

> Although the statute provides guidance to the courts on how to score OV 13, MCL 777.43(2), it does not define the term "continuing pattern of criminal behavior." The word "continuing" clearly refers to an event or process that takes place over time. *Merriam-Webster's Collegiate Dictionary* (11th ed.) defines "continuing" as "to keep going or add to." It defines "pattern" as "a reliable sample of traits, acts, tendencies, or other observable characteristics of a person . . . ." *Id*. Accordingly, the statute contemplates that there must be more than one felonious event. [*Carll*, 322 Mich App at 704-705.]

The *Carll* Court held that *Gibbs* was distinguishable because the *Gibbs* defendant "committed three separate acts against each of the three victims and these three distinct crimes constituted a pattern of criminal activity." *Id*. at 705. By contrast, the *Carll* defendant committed "a single act, and although there were multiple victims, nothing was presented to show that he committed separate acts against each individual victim in the course of the reckless driving." *Id*. at 705-706.

Defendant's circumstances are not more similar to the circumstances of *Carll* than they are to *Gibbs*. The primary distinction the *Carll* Court noted between itself and *Gibbs* concerned the number of "acts"—one in *Carll*, multiple in *Gibbs*. Here, defendant committed multiple acts against the same victim. *Gibbs* is therefore applicable to the trial court's assessment of OV 13, and the trial court did not err by assessing OV 13 at 25 points.

### 7. OV 19

Defendant finally argues that OV 19, "interference with the administration of justice[,]" MCL 777.49, should have been assessed 0 points instead of 10 points. OV 19 is assessed 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice, or directly or indirectly violated a personal protection order." MCL 777.49(c). The term "otherwise" refers to circumstances warranting a higher assessment, namely threats to the security of a penal institution or court or the use of force or threats of force to interfere with the administration of justice. MCL 777.49(a)-(b). Interference entails "actions that actively redirect the investigation; that attempt to or successfully conceal evidence from law enforcement; that attempt to or successfully prevent witnesses from testifying or providing evidence; and that attempt to or successfully prevent law enforcement from being able to arrest the defendant." *People v Deweerd*, 511 Mich 979, 980 (2023) (citations omitted). Interference contemplates something more than "simply not assisting in or helping facilitate a criminal investigation." *Id*. at 980-981.

The trial court found that defendant interfered with the administration of justice by hiding in the woods and in the residence. Defendant argues that he hid in the woods not to avoid arrest and prosecution, but to watch the victim and the older son to gather evidence. Defendant characterizes the 10-point assessment as "punishment" for "not immediately confessing and pleading guilty" to the victim's accusations. Defendant's explanation for his behavior disregards that the jury found that defendant intentionally made a false report of felonies committed by the victim. MCL 750.411a(1)(b), meaning the jury determined defendant's hiding in the woods and the residence was not to gather evidence of the victim's abuse of the older son.

In sum, defendant fails to establish his claims that the trial court erroneously assessed OVs 7, 10, 11, 13, and 19. The trial court therefore did not base his sentences on inaccurate information, and defendant is not entitled to resentencing. *Francisco*, 474 Mich at 88.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Brock A. Swartzle