*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEJUAN MARQUIS GILLUM,

        Defendant-Appellant.

UNPUBLISHED
November 22, 2024
10:41 AM

No. 367963
Wayne Circuit Court
LC No. 22-006165-01-FC

Before: FEENEY, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions on two counts of second-degree murder, MCL 750.317, and two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b, arising from the murders of Antonio Smith and Timothy Pennington. We affirm.

## I. BACKGROUND

On June 1, 2022, defendant and his then-girlfriend, Tiera Bell, went out drinking for the night. Defendant called his best friend and exgirlfriend, Ajah Douglas, to pick him and Bell up to take them home. Smith and Pennington were in the car with Douglas when she arrived. Douglas was driving, Smith was in the front passenger seat, Pennington was in the back seat on the driver's side, Bell was in the back seat on the passenger side, and defendant was in the back seat in the middle. As they were driving, defendant and Smith began arguing. Smith repeatedly threatened to fight defendant and took his shirt off as if he were about to fight. When Douglas pulled into Bell's apartment complex, Smith stopped the still-moving car by throwing himself onto Douglas and slamming on the brake. Smith tried to get out of the car, but defendant suddenly pulled out a gun and fired several shots. Bell and Douglas took off running from the car. Pennington tried to leave the vehicle and follow them, but he was shot several times. Pennington and Smith both died on the scene. Defendant was later charged with two counts of first-degree murder and two counts of felony-firearm.

During the preliminary examination, Bell discussed defendant's actions after the shooting, saying that he called her from jail and sent her letters asking if she "had his back." Bell denied

-1-

that defendant ever explicitly spoke to her about testifying. But Bell was scared to testify because she was concerned that defendant's friends and family would harm her and her kids; they knew where she stayed and she had been told not to testify. During the direct examination, Bell testified that she saw defendant pull out a gun and shoot Smith. She did not see anyone else with a gun in that vehicle. But on cross-examination defense counsel noted that, in a prior statement made under oath to the prosecutor, Bell claimed she did not know who was shooting the gun. Bell responded: "I was scared for my life and my kid's life and I've never been through this before in my life, so I didn't know what to do." Ultimately, defendant was bound over as charged.

During the jury trial, Douglas recounted her version of the shooting, testifying that she heard four or five gunshots go off inside of the car before her ears went numb. Douglas denied seeing Smith or defendant with a gun before the shooting. A forensic pathologist testified that Pennington had 13 gunshot wounds: one to the chest; seven to the back; one to the left buttock; two to the left forearm; one to the left hand; and one to the left thigh. Two gunshot wounds were sustained at contact range, meaning they were fired at a range of two inches from the body or closer, and three were sustained at an intermediate range, or within a few feet. The forensic pathologist found that Smith had 11 gunshot wounds: four to the head; one to the neck; three to the chest; two to the back; and one to the left arm. Three of the wounds were sustained at an intermediate range. Both men died from their wounds. A forensic technician testified that Douglas's front passenger side windshield was impacted by a bullet shot from inside of the car, and he found two shell casings inside of the car.

At the end of the second day of trial, the prosecutor advised the court that he planned to call Bell as a witness but she had not appeared for court. Court was adjourned to give the prosecutor and law enforcement time to locate Bell. The trial court also discussed jury instructions, stating that it would give instructions for first-degree premeditated murder and felony-firearm. The trial court noted that the prosecutor intended to have jury instructions read for the lesser included offense of second-degree murder. At the start of the third day of trial, the parties finalized the jury instructions. Defense counsel stated that, after consulting with defendant, it was defendant's "preference" not to have an instruction on second-degree murder. The prosecutor challenged defense counsel's request, arguing that there was not "any reason that it should be omitted." The trial court included the second-degree murder instruction, noting that it is a standard lesser included offense with respect to first-degree murder.

The trial court also addressed the issue of Bell's unavailability. The prosecutor moved the trial court to declare Bell unavailable as a witness "for the purpose of admitting her testimony from the preliminary exam." Defense counsel objected and requested a hearing on the matter. During the hearing, Detective Terrence Flanders testified about his efforts to locate Bell. The trial court granted plaintiff's request and admitted Bell's preliminary examination testimony under MRE 804(a)(5) and MRE 804(b)(1), finding that Detective Flanders exercised due diligence in his attempt to secure Bell for trial. Once Bell's preliminary examination testimony was read into the record, the parties rested.

During closing arguments, the prosecutor argued the jury should find defendant guilty of first-degree murder because the evidence proved, beyond a reasonable doubt, that defendant intentionally and with premeditation shot Pennington and Smith multiple times, deliberately killing them. Alternatively, the prosecutor asserted the jury should, at least, find defendant guilty

of second-degree murder because the evidence established that it was defendant who shot and intended to kill Smith and Pennington. By contrast, defense counsel argued that defendant should be acquitted because the prosecutor failed to prove defendant committed the murders or had a gun, suggesting that another individual could have killed Pennington and Smith. The trial court then instructed the jury on first-degree murder, second-degree murder, and felony-firearm. The jury found defendant guilty of two counts of second-degree murder and two counts of felony-firearm. This appeal challenging his convictions followed.

## II. UNAVAILABLE WITNESS

Defendant first argues the trial court erred by finding that Bell was unavailable and admitting her preliminary examination testimony at trial because the prosecutor did not demonstrate that he exercised due diligence in attempting to locate her. We disagree.

## A. STANDARDS OF REVIEW

We review a trial court's determination regarding the exercise of due diligence for an abuse of discretion. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998). "An abuse of discretion occurs when the trial court reaches a result that is outside the range of principled outcomes." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). We review a trial court's finding that a witness was unavailable for clear error. *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009). A finding is clearly erroneous if "the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). Additionally, "[w]hether a defendant's Sixth Amendment right of confrontation has been violated is a question of constitutional law that this Court reviews de novo." *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018). "De novo review means we review this issue independently, without any required deference to the courts below." *Id*.

## B. ANALYSIS

"A defendant has the right to be confronted with the witnesses against him or her." *People v Yost*, 278 Mich App 341, 369-370; 749 NW2d 753 (2008), citing US Const, Am VI; Const 1963, art 1, § 20; *Crawford v Washington*, 541 US 36, 42; 124 S Ct 1354; 158 L Ed 2d 177 (2004). A witness's former testimony may be admitted as substantive evidence without violating the rule against hearsay or a defendant's confrontation right so long as the witness is unavailable for trial and "the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." MRE 804(b)(1).[1]

> "Unavailability as a witness" includes situations in which the declarant . . . is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown. [MRE 804(a)(5).]

---

[1] The Michigan Rules of Evidence were substantially amended effective January 1, 2024. We cite the version of the evidentiary rules in effect at the time of defendant's trial.

"The test for whether a witness is 'unavailable' as envisioned by MRE 804(a)(5) is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial." *Bean*, 457 Mich at 684. "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Id*. In this context, "due diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of a witness." *People v Eccles*, 260 Mich App 379, 391; 677 NW2d 76 (2004) (citation omitted).

Defendant argues that the prosecution did not make diligent, good-faith efforts to produce Bell at his trial and relies on *Bean*, 457 Mich 677 and *People v Dye*, 431 Mich 58; 427 NW2d 501 (1988), to support his argument. But those cases present factually distinguishable circumstances from those presented in this case. In *Bean*, an eyewitness to a shooting had testified at the defendant's preliminary examination but could not be located for the trial. *Bean*, 457 Mich at 679-680. Our Supreme Court held that the efforts made to locate the eyewitness were insufficient because, generally: (1) they included only unsuccessful telephone calls to the eyewitness and his mother; (2) despite learning that the eyewitness and his mother moved to Washington, D.C., no efforts were made to locate them in that location, including through that local police department, the postal service, or other agencies; and (3) although the eyewitness had previously disclosed that he lived with his grandmother, the police never went to that address or attempted to locate her. *Id*. at 685-690.

Similarly, in *Dye*, three witnesses in a murder case testified at the defendant's first trial that ended in a mistrial, but those witnesses could not be located for the retrial. *Dye*, 431 Mich at 61-63. Our Supreme Court held that the efforts made to locate the witnesses were insufficient because, generally, the witnesses had been difficult to locate for the first trial, they had been placed in protective custody during that trial, they had expressed their intentions to leave this state, and they had an incentive to go into hiding out of fear of retribution, yet the prosecution made only minimal efforts to locate them for the retrial, relied on out-of-state police agencies but did not provide timely and detailed information to those agencies, and did not even begin to search for the witnesses until shortly before the scheduled retrial date. *Id*. at 68-73, 76-78.

To the contrary, in the present case, there is no evidence that the prosecution had information that Bell had intended to leave this state or that she had, in fact, left this state. And although Detective Flanders acknowledged that he did not stay in close touch with Bell before trial, he testified that Bell assured him that she would appear and testify at defendant's trial. Detective Flanders testified that he initially did a workup to find any information that would aid him in locating Bell. He went to five addresses, called four phone numbers associated with Bell, and attempted to contact her through her social media accounts and e-mail, but was unable to reach her. Detective Flanders also found the address of Bell's mother. He contacted the leasing office and spoke to neighbors, who denied seeing Bell. Detective Flanders monitored Bell's Bridge Card activity from the three months before trial to see if he could "catch a pattern of grocery stores or gas stations" frequented by Bell, although he was unsuccessful. Unlike in *Bean*, here, there is no evidence that Detective Flanders had information as to the possible or likely whereabouts of Bell and simply failed to follow leads that could have led him to locate her. He also spoke to the prosecutor regarding a detainer, which the trial court issued shortly before trial.

Defendant suggests that despite these efforts, due diligence was not exercised because Detective Flanders did not check hospitals and homeless shelters or contact any government assistance programs in his attempt to locate Bell. But "due diligence is the attempt to do everything reasonable, not everything possible, to obtain the presence of a witness." *Id*. Because the trial court's finding that due diligence was exercised to locate Bell before trial was within the range of principled outcomes, *Benton*, 294 Mich App at 195, the trial court did not clearly err by finding that she was an unavailable witness and admitting her prior testimony, *Johnson*, 466 Mich at 497-498.

## III. ADMISSION OF EVIDENCE

Defendant contends he was denied his right to a fair trial because irrelevant and highly prejudicial portions of Bell's preliminary examination testimony were read to the jury. Further, defendant claims that his trial counsel was ineffective in failing to object to the testimony and the prosecutor engaged in misconduct by submitting the testimony without redacting Bell's prejudicial statements. We disagree.

### A. ISSUE PRESERVATION AND STANDARDS OF REVIEW

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). Although defendant challenged the admission of Bell's preliminary examination testimony, he did not object to the portions of the transcript he now claims are prejudicial. As such, his argument is unpreserved for appellate review. See *id*. Defendant's ineffective assistance of counsel and prosecutorial misconduct arguments are also unpreserved because he did not move for a new trial or request an evidentiary hearing, *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014), and he failed to "contemporaneously object and request a curative instruction," *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016) (citation omitted).

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Thorpe*, 504 Mich at 251. "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *Id*. at 251-252 (quotation marks and citations omitted). "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo[.]" *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). But where a defendant fails to preserve a claim of evidentiary error, the issue is reviewed for plain error. *Id*. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Bailey*, 330 Mich App 41, 53-54; 944 NW2d 370 (2019) (quotation marks and citation omitted). This third requirement "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 54 (quotation marks and citation omitted). "Reversal will only be warranted when the plain error leads to the conviction of an actually innocent defendant or when an error affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (quotation marks and citation omitted).

Claims of ineffective assistance of counsel present mixed questions of fact and law, with factual findings reviewed for clear error and questions of law reviewed de novo. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). But where no evidentiary hearing has been held, this Court's review is limited to errors apparent from the record. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Additionally, preserved allegations of prosecutorial misconduct are reviewed de novo "to determine whether the defendant was denied a fair and impartial trial." *People v Akins*, 259 Mich App 545, 562; 675 NW2d 863 (2003). Unpreserved arguments are "reviewed for plain error affecting substantial rights." *People v Jackson*, 313 Mich App 409, 425; 884 NW2d 297 (2015).

## B. ANALYSIS

Generally, all relevant evidence is admissible unless otherwise prohibited by the rules of evidence or the state or federal constitutions. MRE 402; *Yost*, 278 Mich App at 355. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence may be excluded under MRE 403 "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403 is not intended to exclude "prejudicial" evidence, as any relevant evidence will be prejudicial to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909, mod 450 Mich 1212 (1995). Instead, it "is only when the probative value is *substantially outweighed* by the danger of unfair prejudice that evidence is excluded." *Id*. Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Id*. at 75-76 (quotation marks and citations omitted); see also *People v McGuffey*, 251 Mich App 155, 163; 649 NW2d 801 (2002).

Evidence of threats made against a witness may be relevant and admissible to demonstrate a defendant's consciousness of guilt, *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996), but only if there is evidence connecting the threats to the defendant, *People v Lytal*, 119 Mich App 562, 576-577; 326 NW2d 559 (1982).[2] The same is true of evidence that the defendant otherwise tried to coerce or influence the witnesses against him where the attempt suggests consciousness of guilt. See *People v Schaw*, 288 Mich App 231, 237; 791 NW2d 743 (2010). But evidence that a witness was threatened by someone other than the defendant is admissible to explain why a witness has given inconsistent statements or to explain a witness's bias or reluctance to testify. *People v Johnson*, 174 Mich App 108, 112; 435 NW2d 465 (1989); *People v Clark*, 124 Mich App 410, 412; 335 NW2d 53 (1983). This is because, "[a] witness' motivation for testifying is always of undeniable relevance and a [party] is entitled to have the jury consider any fact that may have influenced the witness' testimony." *People v Minor*, 213 Mich App 682, 685; 541 NW2d 576 (1995).

---

[2] Opinions of this Court issued before November 1, 1990 are not strictly binding under MCR 7.215(J)(1), but may be considered persuasive authority. *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 383 (2012).

During the preliminary examination Bell stated that, after defendant was arrested, he called her from jail and asked her if she "ha[d] his back." Defendant also wrote Bell a letter, telling her that he cared about her and asking if she had "his back so he can come out and be with [Bell] and [her] kids." Although Bell denied that defendant ever explicitly spoke to her about testifying, she confirmed that his best friend told her not to testify. Bell explained that she was scared to testify because she did not "know if [defendant's friends and family] will come and do something to me and my kids because they know where we stay."

Defendant's statements to Bell about "having his back" were relevant because they demonstrated defendant's attempt to influence Bell's willingness to testify against him and were suggestive of his consciousness of guilt. See *Schaw*, 288 Mich App at 237. Bell's statements about defendant's friend were also relevant to explain her reluctance to testify, especially because her credibility was questioned during the preliminary examination and she did not appear for trial. See *Minor*, 213 Mich App at 685. These statements were not unduly prejudicial to defendant because Bell denied that defendant ever threatened her or explicitly spoke to her about testifying, and there was nothing in her testimony to suggest that defendant's friend acted at his direction.

Defendant asserts that Bell's statement regarding his custodial status was unduly prejudicial because it encouraged the jury to speculate or presume that he was guilty of the charged offenses. In support of this argument, defendant relies on *People v Holly*, 129 Mich App 405, 416; 341 NW2d 823 (1983). But *Holly* does not concern the impact of evidence of defendant's custodial status, and defendant fails to identify any evidence suggesting that the jury relied on defendant's custodial status when determining his guilt.[3] Thus, defendant's argument is without merit and he cannot demonstrate that the trial court plainly erred by admitting Bell's testimony. See *Bailey*, 330 Mich App at 53-54.

Because Bell's statements were properly admitted during trial, it would have been futile for defense counsel to object to their admission. As such, defendant cannot prove he was denied the effective assistance of counsel. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Additionally, because claims of prosecutorial misconduct may not be based on a prosecutor's good-faith efforts to admit evidence, *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999), and there is no basis to conclude that the prosecutor offered the evidence in bad faith, defendant cannot demonstrate any error by the prosecutor warranting reversal.

---

[3] In *Holly*, the defendant was charged with and convicted of an armed robbery. A police officer testified the defendant gave a statement that implicated him in other, unrelated armed robberies. *Holly*, 129 Mich App at 414-415. This Court found that the officer's statements were prejudicial because the defendant's "believability [was] substantially reduced if one [knew] that Holly previously participated in other armed robberies." *Id*. at 416. Nonetheless, this Court affirmed the defendant's conviction, finding that the "evidence against him was simply too strong." *Id*.

## IV. JURY INSTRUCTIONS

Defendant argues that the trial court erred by instructing the jury on the lesser included offense of second-degree murder because the evidentiary record did not support the charge. We disagree.

## A. STANDARDS OF REVIEW

> We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion. Even when instructional error occurs, reversal is warranted only if after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative. The defendant bears the burden of establishing that the error undermined the reliability of the verdict. [*People v Everett*, 318 Mich App 511, 528-529; 899 NW2d 94 (2017) (quotation marks, citations, and alterations omitted).]

## B. ANALYSIS

> It is the function of the trial court to clearly present the case to the jury and instruct on the applicable law. Necessarily included lesser offenses are offenses in which the elements of the lesser offense are completely subsumed in the greater offense. A requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it. [*Id*. at 529 (quotation marks, citations, and alterations omitted).]

"In analyzing whether the evidence clearly supports the instruction, we must consider the entire cause, including evidence that has been offered to support the greater offense." *Id*. (quotation marks and citation omitted).

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). To "premeditate" is to "think about beforehand" and to "deliberate" is to "measure and evaluate the major facets of a choice or problem." *People v Bass*, 317 Mich App 241, 266; 893 NW2d 140 (2016) (quotation marks and citation omitted). "Second-degree murder is any kind of murder not otherwise specified in the first-degree murder statute." *People v Blevins*, 314 Mich App 339, 358; 886 NW2d 456 (2016). The difference between these two crimes is that while both encompass an intentional killing, first-degree murder requires the additional finding that the murder was premeditated. See *People v Carter*, 395 Mich 434, 437; 236 NW2d 500 (1975) ("[S]econd-degree murder is first-degree murder minus premeditation or [an] enumerated felony."). Thus, "[s]econd-degree murder is always a lesser included offense of first-degree murder." *Id*. Accordingly, the question before us is whether there was sufficient evidence to support the second-degree murder jury instruction.

The evidence showed that as Douglas was driving defendant and Bell home, defendant and Smith began arguing. Smith repeatedly threatened to fight defendant and even took his shirt off as if he were about to fight. Bell denied hearing defendant threaten Smith. Instead, defendant told Smith that he was not going to argue with Smith. This suggests that defendant did not have an intention to harm Smith. Once Smith stopped the still-moving car by throwing himself onto Douglas and slamming on the brake, Smith tried to get out of the car. But before he could exit the vehicle, Bell heard shots being fired on her left side and saw defendant shoot Smith. As Pennington tried to escape, he was also shot several times. A rational trier of fact could find that defendant did not premeditate or deliberate killing Smith and Pennington. Rather, the jury could find that defendant was acting instinctively and in response to Smith's acts of aggression. Because a rational view of the evidence supports a jury instruction for second-degree murder, there is no error.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace